[No. 12101.   Department Two.   January 8, 1915.]

SAMUEL G. MOORE, *Appellant*, v. JULIA A. PARKER *et al.*,
*Respondents*.[1]

REFORMATION OF INSTRUMENTS—DEGREE OF PROOF.  Reformation of
an instrument for mutual mistake will not be granted unless the
evidence is clear and convincing that the writing was not what the
parties intended and that the mistake was mutual.

SAME—MUTUAL MISTAKE—EVIDENCE—SUFFICIENCY.  The evidence
does not establish mutual mistake warranting reformation of a
mortgage and notes, which authorized a deficiency judgment against
the mortgagors, where it appears that the mortgagors were persons
of more than ordinary intelligence and education, one of them being
a lawyer of experience, that they executed the mortgage and notes
upon the customary printed forms, after consultation with a lawyer
who claimed that the stenographer failed to include therein an
agreement that no personal liability should rest upon the members,
and that the notes and mortgage were signed without reading, and
defendants' evidence as to such an agreement was denied and the
denial corroborated and the agreement was not established by a
preponderance of the evidence.

Cross-appeals from a judgment of the superior court for
Yakima county, Grady, J., entered January 22, 1914, in an
action to foreclose a mortgage, granting a deficiency judg-
ment against one defendant and denying it as to the other.
Reversed on plaintiff's appeal.

*Englehart & Rigg*, for appellant.

*Parker, Richards & Fontaine*, for respondents.   A mis-
take in a written instrument caused by ignorance, mistake
or negligence of a draughtsman will be corrected in equity.
It does not matter whether the draughtsman was the agent
of the party seeking the correction or of the other party.
*Murray v. Sanderson*, 62 Wash. 477, 114 Pac. 424; *Dennis
v. Northern Pac. R. Co.*, 20 Wash. 320, 55 Pac. 210; *Linton
v. Unexcelled Fire-Works Co.*, 128 N. Y. 672, 28 N. E. 580;
*Smith v. Jordan*, 13 Minn. 264, 97 Am. Dec. 232; *Leitsen-*

[1]Reported in 145 Pac. 440.

*dorfer v. Delphy*, 15 Mo. 160, 55 Am. Dec. 137; *Scott v. United States*, 12 Wall. 443; *Elliott v. Sackett*, 108 U. S. 132; 9 Cyc. 245A.

MOUNT, J.—This action was brought to foreclose a mortgage for $4,000 upon certain described lands in Yakima county. The notes and mortgage are the usual form of notes and mortgage executed in such cases. The defendants Julia A. Parker and Ed. Parker, who were the makers of the notes and mortgage, appeared in the action and interposed three affirmative defenses, the first of which was the one relied upon and the only one necessary to be stated. It was to the effect, that, prior to the execution of the notes and mortgage, it was agreed between the parties thereto that there should be no personal liability upon the notes; that, by mistake, the notes and mortgage were so drawn as to render the defendants personally liable thereon, when in fact there was an agreement that they should not be personally liable. They therefore prayed that the notes and mortgage be reformed so that there should be no personal liability over against the makers of the notes, if the mortgaged property was not sufficient to extinguish the debt. This affirmative matter was denied by the plaintiff.

Upon the trial of the case, the court found that the contract was as alleged by the affirmative defense mentioned, but that the defendant Ed. Parker was so negligent in executing the notes and mortgage that he could not now claim that there was a mutual mistake. The court also found that Julia A. Parker was not negligent, and concluded that the notes and mortgage should be reformed as to her, and that there should be no personal liability against her upon the notes. A decree was entered to the effect that a personal judgment should be entered against Ed. Parker for any deficiency after the sale of the mortgaged property. A deficiency judgment against Julia A. Parker was denied. The plaintiff has appealed from so much of the decree as

refused a deficiency judgment against Julia A. Parker, and the defendants have appealed from that part of the decree which authorizes a personal judgment against Ed. Parker.

This presents the only question made upon the briefs upon appeal. It is largely a question of fact. The rule is settled in this court that, before an instrument in writing will be reformed, the evidence must be clear and convincing that the writing is not what the parties intended it to be, and that the mistake was mutual. *Bruce v. Grays Harbor Drug Co.*, 68 Wash. 668, 123 Pac. 1075; *Hapeman v. McNeal*, 48 Wash. 527, 93 Pac. 1076; *Dempsey v. Dempsey*, 61 Wash. 632, 112 Pac. 755; *Heffron v. Fogel*, 40 Wash. 698, 82 Pac. 1003.

In *Hapeman v. McNeal, supra*, we quoted the rule from 2 Pomeroy, Equity Jurisprudence (3d ed.), § 859, saying:

"Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error."

We are satisfied, from a careful examination of the record, that the evidence fails to show, even by a preponderance of the evidence, that there was any mutual mistake between the parties when the notes and mortgage in this case were executed. It is conceded that there were four promissory notes. Three of them were for $500 each, and one for $2,500. These notes were executed upon printed forms. The notes themselves contain no interlineations or additions to the printed forms. These forms do not provide that there shall be no personal liability against the makers. It is conceded that Julia A. Parker executed these notes, and that her husband, Ed. Parker, also executed them. The mortgage also is in the usual form. It does not contain any reservation that the mortgaged property shall be the only security for the payment of the debt. It was shown upon the trial of the case, without any dispute, that Ed. Parker, one of the makers of these notes and mortgage, was a

lawyer who had for twenty years practiced his profession. He was a man who had dealt largely in real estate transactions. He had executed many notes. He was a man of more than ordinary intelligence and knew the forms of contracts, and especially of notes and mortgages. His wife, Julia A. Parker, was, likewise, a woman of more than average intelligence. She had means of her own. Both makers of the notes and mortgage could read and write the English language and understood its purport. They testified upon the trial of the case that, at the time the agreement was made and these notes and mortgage were executed, it was understood between the payee of the notes and the makers that there should be no personal liability, but that the mortgaged property should be the sole security for the debt. They testified that, after the contract was made, the parties went to the office of a brother of Ed. Parker, which brother was also a lawyer practicing his profession, and related to him the contract which had been entered into; that this brother made memoranda of the terms of the contract and turned the same over to his stenographer to prepare the notes and mortgage; that this stenographer, instead of preparing the notes and mortgage as directed, failed to include in the notes and mortgage the agreement that no personal liability should rest upon the makers if the mortgaged property was insufficient to pay the debt; and that, relying upon the contract as drawn by the stenographer, the makers signed the notes and mortgage without reading them.

The plaintiff testified that there was no such agreement. He testified that the notes and mortgage as executed contained the whole agreement, and that there was no reservation of any kind, except as stated in the notes and mortgage themselves. There was other evidence which tended to corroborate his statements.

So far as the oral evidence goes, considering all of the witnesses as being equally credible, we are satisfied that the oral evidence is about evenly balanced upon the question

whether there was or was not an agreement to the effect that there should be no personal liability against the makers of the notes and mortgage. But we are satisfied, from the whole evidence and all the circumstances in the case, that there was no sufficient evidence upon which the court could conclude and be satisfied by clear and convincing evidence that the writings as finally executed were not as intended; especially when we consider the circumstances surrounding the transaction. In the first place the notes and mortgage are clear upon their face. They contain no provision that the makers shall not be personally liable. As is stated above, the brother of the makers of the notes and mortgage was a lawyer. He examined the notes and mortgage personally. The notes were the usual printed form. A mere glance at the notes would show that there was no exception stated therein. If any interlineations appeared, or if any additions were made to the printed form, it would plainly show upon the face of the notes. Therefore, when the makers of the notes, who were intelligent people, accustomed to notes, glanced at them, they must have seen that there was no such exception as they now claim should have been inserted therein. It is unbelievable that a man or a woman of the intelligence of the makers of these notes could be deceived into signing them believing that there were exceptions therein which were not in ordinary notes. The record shows that, at the time the notes and mortgage were executed, the mortgagor Ed. Parker and the mortgagee, Samuel G. Moore, were present in the office of Fred Parker where the notes were drawn and prepared. Prior to the execution of the notes and mortgage, Mr. Moore stated that he desired to have his attorney examine the notes. He was then told, and this fact is conceded, that the notes and mortgage were in the usual form, and that he might take them to his attorney to be examined. Mr. Moore did so. His attorney examined them and corroborated what had been said. The notes and mortgage were then immediately returned to be executed.

Mr. Ed. Parker thereupon signed them, and subsequently they were executed by his wife, Julia A. Parker. Mrs. Parker was not present at the time Ed. Parker signed. She testified that, at the time she signed the notes and mortgage, she asked Fred Parker, her brother-in-law, if there would be any personal liability against her, and that she was informed that there would not be, and for that reason she signed the notes. This may be true. But this falls far short of showing that, at the time the notes and mortgage were executed, there was a mutual mistake; because, in order to be mutual, the mistake must have been made by both parties and not by one party to the instrument.

There are other circumstances which might be mentioned, but what we have said makes it unnecessary to mention them, because we are satisfied that, even if the oral evidence was evenly balanced and there were no other circumstances, in such case the court should not reform a written instrument. But in addition to the oral evidence, from the circumstance that the makers of these notes, by a simple glance at them, without even taking time to read them, must have seen and known that the notes were the ordinary printed forms and contained no changes or interlineations, they must necessarily have known, also, that the extraordinary exception such as they now contend for was not contained therein. As we have said above, the makers of these notes were intelligent people. They had dealt largely in notes and mortgages, and in real estate. Mr. Ed. Parker at least was acquainted with the forms of notes and mortgages and knew the effect thereof. We cannot think, in view of these circumstances, that there was any mutual mistake in the execution of the notes and mortgage.

The judgment of the trial court is therefore reversed, and the cause is remanded with instructions to enter a decree as prayed for in the complaint against both Julia A. Parker and Ed. Parker as makers of the notes and mortgage.

CROW, C. J., MAIN, ELLIS, and FULLERTON, JJ., concur.