[No. 19223. *En Banc.* November 18, 1925.]

RUDOLPH STRUTZEL et al., *Respondents,* v. HATTIE A. RICHARDSON, *Appellant.*[1]

REFORMATION OF INSTRUMENTS (6, 20)—RIGHT OF ACTION— MUTUALITY OF MISTAKE—EVIDENCE—SUFFICIENCY. There can be no reformation of deeds, dividing a tract of land between two purchasers, on account of a mistake of one of the parties, where the mistake was not a mutual one, the other party understanding the deeds as they were written, the deeds not being induced by fraud, bad faith or the mistake of another (HOLCOMB and FULLERTON, JJ., dissenting).

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 29,

[1]Reported in 240 Pac. 682.

1923, upon findings in favor of the plaintiffs, in an action to reform a deed, tried to the court. Reversed.

*Corbin & Easton,* for appellant.

*W. O. Parr,* for respondents.

MITCHELL, J.—Walter S. Richardson and Hattie A. Richardson owned a tract of land, containing 10.88 acres, situated in the northeast quarter of the northwest quarter of section 11, township 23, north, range 19 E. W. M. The northeast corner of the tract is 656 feet south of the northeast corner of the northeast quarter of the northwest quarter of the section. The north and south boundary lines of the tract are parallel and run east and west. The east boundary line of the tract, 463 feet, runs north and south. The west boundary line runs northeasterly and southwesterly. The tract contained twenty rows of fruit trees running westerly across the tract, the rows dropping southerly. There were a few other trees in the northwest corner of the tract and still others irregularly situated on the southerly side of the tract.

The owners of the property decided to divide it "as near equally as possible." Walter S. Richardson executed and delivered to Hattie A. Richardson a deed conveying a portion of it described as commencing at the northeast corner of the 10.88 acre tract, thence running south on the east line

"238 feet to the center between two rows of trees; thence west following the center between two rows of trees 1000 feet to the center of a deep gulch, thence northerly along the center of said gulch to a point, etc.",

thence to the place of beginning, containing 5.44 acres more or less. At the same time Hattie A Richardson conveyed to Walter S. Richardson the remainder or southerly portion of the 10.88 acre tract, describing

the east boundary line as being 225 feet and reciting that the tract contained 5.44 acres more or less.

Thereafter Walter S. Richardson sold his tract to Strutzel and wife, whereupon all three of them brought this action against Hattie A. Richardson to reform the deeds of conveyance between the Richardsons, on the sole ground of mutual mistake. The defendant resisted the suit by appropriate denials of the allegations of the complaint. A judgment was entered for the plaintiffs, providing that the deed to the defendant be reformed so that the description shall read, commencing at the northeast corner of the 10.88 acre tract,

"thence running south 217 feet [instead of 238 feet as the deed was written] to a point which is in the center between the 10th and 11th rows of trees counting south from the place of beginning; thence running westerly in the center between the 10th and 11th rows of trees 1000 feet to the center of a deep gulch, thence northerly along the center of the gulch to a point, etc., thence east to the place of beginning."

The judgment also provides for the reformation of Hattie A. Richardson's deed to Walter S. Richardson to the same extent, that is, instead of the east boundary line of the portion conveyed to him being 225 feet, it is now fixed at 246 feet. The defendant has appealed.

There is no claim or pretense that there was any fraud or bad faith in the making of the deeds; only a mutual mistake is alleged and attempted to be shown. Since the north line of one tract is the south line of the other, the question in the case is was there a mutual mistake on the part of the Richardsons in describing or fixing that common boundary line so that it runs between the 11th and 12th rows of trees instead of the 10th and 11th rows as the court has decided.

The evidence shows that, in their preliminary negotiations, the Richardsons agreed upon certain persons

to measure the east boundary line of the whole tract and set a stake in the center. This was done, the stake being set at a point 231½ feet south of the northeast corner of the tract. The stake was driven 3½ or 4 feet south of the 11th row of trees at the east boundary line. At the writing of the deeds, both of the Richardsons being present, it was mentioned by the conveyancer that a line running west from the stake would intersect a row of trees. Mr. Richardson was aware of that fact, while it apears that Mrs. Richardson was not. It was then suggested by the conveyancer that, for the sake of convenience in irrigating and spraying the fruit frees, the line running westerly be made to run in the center between two rows of trees. The parties agreed, and accordingly the starting point for the common boundary line was placed 6½ feet further south than the stake, and, as a matter of fact, in the center between the 11th and 12th rows of trees.

There is some confusion in the testimony as to what was said at the time the parties made the deeds. Although Mr. Richardson knew there were twenty rows of trees, it is not clear that he knew where the stake had been set with reference to them. It appears rather satisfactorily that both he and the conveyancer got the idea that the deeds as written fixed the line between the 10th and 11th rows, although the starting point as agreed on was 6½ feet further south than the stake. On the contrary, it is equally clear that Mrs. Richardson was not conversant with the number of trees and the form of the orchard, but was guided by the monument or stake; and, when it was proposed to commence the common boundary line a few feet further south and follow the rows of trees, to obviate inconvenience in cultivating the orchard, she was justified in thinking—and it appears she did think—that all of the row of

trees, the east end of which was north of the stake, was being conveyed to her.

Altogether, there appears to have been a mistake, but not a mutual one. The deeds as written are as she understood they were to be. In such a case, equity cannot give affirmative relief by way of reformation. It is a case of a mistake of one party to a contract not induced by fraud, bad faith, or the mistake of another. In *Bruce v. Grays Harbor Drug Co.*, 68 Wash. 668, 123 Pac. 1075, it was said:

"The rule is that, before a written instrument will be reformed, the evidence must be clear and convincing that the writing is not what the parties intended it to be, and that the mistake was mutual."

Other cases to the same effect are: *Carlson v. Druse*, 79 Wash. 542, 140 Pac. 570; *Silurian Oil Co. v. Neal*, 277 Ill. 45, 115 N. E. 114; *Fullerton v. United States Casualty Co.*, 184 Iowa 219, 167 N. W. 700, 6 A. L. R. 367; *Paine v. Jones*, 75 N. Y. 593; 23 R. C. L. 327.

Reversed, with directions to dismiss the action.

TOLMAN, C. J., MAIN, PARKER, ASKREN, and MACKINTOSH, JJ., concur.

FULLERTON, J. (dissenting)—In my opinion, there was a mutual mistake in the execution of the deeds, and there should be a reformation in some form. I am unable to conclude, however, that the trial court reformed the deeds in conformity with the original contract of the parties; the contract upon which they did mutually agree. But as the question involved is largely one of fact, it would serve no useful purpose to point out the form of reformation I think should be made. I, therefore, content myself with an expression of my dissent from the conclusion reached by the majority.

HOLCOMB, J., concurs with FULLERTON, J.