[No. 24705. Department Two. February 1, 1934.]

Minnie M. Blass, *Respondent,* v. Zora A. Waldrip *et al., Appellants.*[1]

*Frank C. Owings,* for appellants.
*Geo. H. Funk,* for respondent.

Blake, J.—October 21, 1931, plaintiff and defendants entered into a written contract, whereby plaintiff agreed to sell and defendants agreed to buy 100,500 shares of the stock of the Blass Oyster Company. The consideration agreed upon was the payment, to be made by defendants, of the sum of $160 per month "during the remainder of the natural life of the seller." The contract contained a forfeiture clause, reading as follows:

[1]Reported in 29 P. (2d) 403.

"In the event of failure of buyers or their assigns to make each and all of the payments provided for herein, all of the said stock shall be returned to seller and all payments made on account hereof retained by seller as liquidated damages; provided that if any payment shall not be made when due, the trustee shall give notice by registered mail to buyers within ten days after due date and no default shall be declared unless there shall be a failure to pay within twenty days after such notice. In the event of such failure to pay within twenty days, buyer shall be wholly in default."

After making eight monthly payments, as provided for in the contract, the defendants declined to further carry out the contract. This action was brought by plaintiff in October, 1932, to recover $640, being the amount of four monthly payments then past due under the contract.

The defendants interposed a defense of mutual mistake, alleging that it was understood and agreed between plaintiff and defendants, at the time the contract was executed, that defendants might, at any time, stop making the payments provided for in the contract; that, if they did so, the payments theretofore made should be forfeited, and that all liability of defendants, under the contract, should thereupon be at an end; that a clause so providing was omitted from the contract through the inadvertence and mistake of the scrivener who prepared the instrument. In her reply, plaintiff denied these allegations. Upon the issue thus made, the cause was tried to the court, who made findings favorable to plaintiff. From the judgment entered thereon, defendants appeal.

Upon breach of a contract for the sale of personal property, there are ordinarily two remedies open to the vendor: (a) He may disaffirm the contract and retake the chattels; or (b) bring an action to recover

the purchase price. *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577. When the contract provides for forfeiture of payments made, it simply affords an additional remedy to the vendor. The vendor, however, is not obliged to pursue it. *Asia Investment Co. v. Levin,* 118 Wash. 620, 204 Pac. 808, 32 A. L. R. 578. Unless it is provided in the contract that forfeiture shall be the vendor's exclusive remedy, the vendee cannot, by reason of the forfeiture clause, escape liability for specific performance. *McCutchen v. Brink,* 129 Wash. 103, 224 Pac. 605, 27 R. C. L. 613.

It is clear, therefore, that, under the contract as executed, respondent may maintain this action.

■ Under the issues here presented, the appellants can escape the obligation to pay only by showing that, through mutual mistake, there was omitted from the contract a provision limiting respondent's remedy to rescission and forfeiture of payments theretofore made. The burden of proving such mistake is upon the appellants; and the measure of proof required is that it shall be clear, cogent and convincing. *Hapeman v. McNeal,* 48 Wash. 527, 93 Pac. 1076; *Bruce v. Grays Harbor Drug Co.,* 68 Wash. 668, 123 Pac. 1075; *Moore v. Parker,* 83 Wash. 399, 145 Pac. 440; *Strutzel v. Richardson,* 136 Wash. 485, 240 Pac. 682; 2 Pomeroy's Equity Jurisprudence (4th ed.), § 859. The authority last cited says:

"Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error."

The trial court found that appellants failed to sustain the burden of proof so imposed upon them. Our examination of the record leads us to the same conclusion.

The preliminary negotiations leading up to the execution of the contract were all conducted through O. M. Green as intermediary. There is no evidence to warrant the conclusion that he was acting as agent for respondent, nor, for that matter, for appellants. He was interested (for reasons here immaterial) in seeing the deal consummated. As we read the record, his activities were merely that of a volunteer. He testified that he understood that respondent's remedy under the contract was to be confined to the right of rescission and forfeiture of payments already made; that that was the understanding of appellants; and that he felt certain that he had communicated such understanding to respondent, but whether before or after the execution of the contract, he could not say. The respondent denied any such understanding, and denied that Green had ever mentioned the subject to her.

The parties, themselves, never met or discussed the transaction until October 21st, when they met for the purpose of executing the agreement—which, by the way, had already been prepared by an attorney acting for appellants. The contract was read and executed without preliminary or subsequent discussion of its terms or contents. No fault was found in any term contained therein, nor suggestion made. of any term left out. Two of appellants, however, testified that it was their understanding that they could cease making payments at any time, and that their liability under the contract would thereupon cease, save the forfeiture of payments already made. It is not intimated that such understanding was communicated to respondent, except by the testimony of Green, above referred to, which is so indefinite that it carries little weight in the face of the categorical denial thereof by the respondent.

It is suggested by counsel for appellants that, considering the life expectancy of respondent, appellants, under the contract as written, were taking on a possible obligation of $27,000 or $28,000; that, considering the encumbrances on the Oyster Company's properties, this would be a grossly excessive price for respondent's stock; that it is therefore improbable that men of the business experience of appellants would take on such an obligation. But mutual mistake cannot be grounded on probabilities. 2 Pomeroy's Equity Jurisprudence, *supra.* If probabilities were to be taken into account, however, it is equally improbable that respondent would relinquish, for a few hundred dollars, at the beginning of the harvest season, her rights in oyster beds which had made returns of thousands of dollars in a single season.

We think the evidence fails to establish the defense of mutual mistake.

Judgment affirmed.

BEALS, C. J., GERAGHTY, TOLMAN, and MAIN, JJ., concur.