[No. 26400. Department One. March 26, 1937.]

MANSFORD SMITH, *Appellant,* v. SUNNYSIDE VALLEY IRRIGATION DISTRICT, *Respondent.*[1]

[1] Reported in 65 P. (2d) 1271.

*Charles F. Bolin* and *E. L. Bennett,* for appellant.

*Stephen E. Chaffee,* for respondent.

MILLARD, J.—On February 14, 1935, the Sunnyside Valley Irrigation District sold to Mansford Smith an eighty-acre irrigated tract of land. The stipulated purchase price was twenty-five hundred dollars. Six hundred dollars was paid at the time of the execution of the contract, and the remainder was payable in annual installments, the last of which would be due February 11, 1940.

On February 24, 1936, the purchaser instituted an action against the irrigation district, praying for the reformation or rescission of the contract, on the ground that the contract had been altered by the irrigation district, after the contract had been executed by the purchaser, by the insertion of the following language:

"Party of the second part assumes the payment of all deferred construction charges on the water right contracts."

This action was instituted by Smith after service by the irrigation district upon him of declaration of forfeiture on February 13th. Smith was thereby notified that, if he failed to make payment of the installment of four hundred dollars, according to the contract, prior to March 1, 1936, the contract would be forfeited and the irrigation district would repossess the premises. The trial court was of the view that there was no mutual mistake, and that the plaintiff failed to sustain the burden imposed upon him of proving that the contract had been altered after the plaintiff had signed the contract. Judgment was entered dismissing the action and granting to the defendant the affirmative relief (forfeiture of the contract) for which the defendant prayed. The plaintiff appealed.

■ The determinative question in the case at bar is one of fact. Unless the appellant sustained the burden of proving the alteration of the contract subsequent to the time of its execution by him, the judgment must be affirmed.

We held, in *Blass v. Waldrip,* 176 Wash. 324, 29 P. (2d) 403, that the burden of proving such mistake is upon the party seeking reformation of the written instrument; "and the measure of proof required is that it shall be clear, cogent and convincing."

The rule announced in 2 Pomeroy's Equity Jurisprudence (4 ed.), § 859, as follows, was approved in the case cited:

"Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error."

There is testimony to the effect that the appellant believed the purchase price for the property was in the net amount of twenty-five hundred dollars, and that he bought the property with that understanding. It is his contention that, had he known he would be obligated to pay approximately thirteen hundred dollars additional as construction charges against the property, he would not have entered into the contract. There is testimony to the effect that the appellant would not be required to pay more than the purchase price of twenty-five hundred dollars for the land, and there would be no deferred construction charges against the land for him to pay.

The evidence, briefly, on behalf of the respondent is that the real estate contract, which is a mimeographed form, with space therein for the insertion of names, price, and other information, was prepared by the secretary of the respondent, who typed, at the top of the second page of the contract,

"Party of the second part assumes the payment of all deferred construction charges on the water right contracts."

This secretary testified that a carbon copy was made at the same time she typed the original. (Our examination of the original and carbon copy convinces us that both were typed at the same time.)

Prior to the preparation of this contract, the question of the deferred construction charges had been before the respondent, and it was the custom to type a provision similar to the one, of which the appellant complains, in all contracts for the sale of land where there were deferred construction charges. This provision was inserted in both copies of the contract prior to the time the original was mailed to appellant. Appellant signed the contract and returned it with a letter respecting drainage charges. The contract returned by the appellant was executed February 14, 1935, and his letter, which reads as follows, is of the same date:

"I am signing and returning contract for purchase of land described therein as per agreement at time of first payment: That there is to be no claim held against me or land covered by contract for drainage charges previous to date of this contract."

The reason, so it was testified, for this letter was a conversation the appellant had with a neighbor who felt he had been defrauded on drainage assessments. Appellant's letter was submitted to respondent's board of directors on February 25, 1935. On February 26, 1935, the secretary wrote to the appellant, as follows:

"I had your letter of February 14th before the Board of Directors at its meeting yesterday. The board instructed me to write you that it does not care to enter into contract regarding the payment of the drainage on Serials 01424 and 01501, the W½ NE¼

of Section 16-10-22, but will go through with the contract as given to you and signed by you.

"I will state, however, that I phoned the County Treasurer's office regarding the drainage on this land and received the following letter:

" 'Confirming our telephone conversation this morning in which you requested information regarding the assessments on drainage district No. 2. There is no assessment levied for maintenance on this district for 1934, and in speaking to Mr. Brashears just a few minutes ago, he stated that there would be no supplemental levy as far as he knew, because the district is in very good circumstances. There will, of course, be maintenance assessments from year to year.'

"This would indicate that you would have very little, if any, drainage to pay as a supplemental assessment.

"Please inform us whether we shall forward you the contract as above stated."

The appellant made inquiry at the office of the county treasurer and ascertained that the taxes and drainage charges had been cancelled. Appellant then informed one of the members of the board of directors that he was satisfied and willing to let the deal go through, as the contract had been written. This director then telephoned that information to respondent's secretary, who, under date of March 15, 1935, wrote appellant, as follows:

"Since our letter of February 26th to you, Mr. Roady called me over the phone and stated that he had talked with you and that you have agreed with him to let the contract covering Serials 01424 and 01501, NW¼ NE¼ and SW¼ NE¼ less R/W of DD No. 2, Section 16-10-22, go through just as it was when you signed it.

"We are therefore mailing you the copy of the contract just as you signed it and as agreed upon between you and Director Roady."

Thereafter, the appellant made extensive improvements on the property.

Sometime in October, 1935, when the appellant received from the bureau of reclamation statements for annual operation and maintenance charges for the year 1935, and also in connection with one installment of construction charges which had been deferred, but none of which was due at the time the contract was made on February 14, 1935, the appellant called at the home of one of the directors of the respondent, who stated to the appellant: "I told you there were construction charges on that before you bought it." At the request of the appellant, this director presented the matter to other officials of the respondent district, and on January 3, 1936, appellant, his son, and his attorney met with the board of directors of the district. The attorney stated at that time that the contract had been changed after appellant had signed it, by insertion at the top of page two of the language committing the appellant to the payment of the deferred construction charges on the water right contracts.

It does not appear that, at any time prior to this date, the appellant made any claim or contention that the contract had been altered or changed after it was signed by him. On February 13, 1936, as stated above, declaration of forfeiture was served upon the appellant, requiring him to pay the February 11, 1936, installment of four hundred dollars. On February 24, 1936, appellant instituted this action for reformation or rescission of the contract. Respondent sought affirmative relief of forfeiture.

We are convinced, as above stated, by our examination of the original and carbon copy of the contract that both were typed at the same time. Not only has the appellant failed to sustain the burden of proving the alleged mistake by clear, cogent, and convincing proof, but the evidence does not preponderate against

—it sustains—the conviction of the trial court that there was not a mutual mistake of fact, and that there had not been a fraudulent alteration of the contract. That being so, the judgment must be, and it is, affirmed.

STEINERT, C. J., MAIN, BLAKE, and GERAGHTY, JJ., concur.

