[No. 27557. Department One. November 2, 1939.]

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, *Respondent*, v. JAY AGNEW, *Appellant.*[1]

[1]Reported in 95 P. (2d) 386.

C. D. *Cunningham*, for appellant.

*Davis & Groff*, for respondent.

MILLARD, J.—Alleging breach of covenant in bill of sale that there were no encumbrances against certain personal property sold to it by the defendant, plaintiff brought this action to recover the amount of money it was required, subsequent to the sale, to pay to discharge the lien of taxes to which the property was subject at the time of the execution of the bill of sale and transfer to the plaintiff of the property covered thereby. Defendant answered, denying breach of warranty, and by cross-complaint prayed reformation of the bill of sale on the ground of mutual mistake. The cause was tried to the court, which found that plaintiff did not agree and did not intend to agree to purchase, subject to the encumbrance of existing taxes thereon, the property described in the bill of sale executed by defendant; that defendant mistakenly assumed that all taxes assessed against the property were paid, but defendant's mistake was not induced by fraud or bad faith on the part of plaintiff or its representatives; and that defendant fully understood the provisions of the bill of sale executed by him at the time he delivered it to plaintiff and received the consideration of three thousand dollars therefor from the plaintiff. The trial court concluded that there was no mutual mistake, that plaintiff was entitled to recovery on its complaint, and that defendant's cross-complaint asking reformation of the bill of sale ought to be dismissed. Judgment was entered accordingly. Defendant appealed.

Appellant does not claim that there was any fraud or bad faith in the making of the bill of sale. It is his position that the parties reached a definite agreement— that the personal property was to be sold to the re-

spondent subject to the encumbrance of taxes—but by mistake the written bill of sale fails to express that agreement. Respondent insists there was no mutual mistake, and that it was not mutually understood or agreed that the personal property should be sold subject to the lien of existing taxes. In other words, the question presented is whether there was a mutual agreement that the personal property should be sold subject to the lien for existing taxes, but by mistake of the parties the bill of sale fails to express this agreement.

In February, 1928, Jay Agnew purchased from Marie M. Hudson, who transferred title thereto to Ina Rae Seitz, the wife of Maurice W. Seitz, an attorney at law in Portland, Oregon, the Malcolm and Salisbury apartment houses, together with the furniture and fixtures therein, in Portland, Oregon. The real property was purchased subject to a mortgage thereon held by John Hancock Mutual Life Insurance Company. In 1931, Mrs. Seitz transferred title to the realty and personalty just described to the Interstate Finance Company, an Oregon corporation, of which Agnew was president and the principal—probably the only—stockholder. Maurice W. Seitz was secretary of the finance company.

In 1933, appellant, through the Interstate Finance Company, turned the property over to Metzger-Parker Company, under an agreement whereby the latter became the manager of the apartment houses. After payment of the expense of maintenance of the property, the remainder of the revenue derived from rentals was applied on the mortgage held by respondent. When in February, 1935, respondent acquired title to the property, the Metzger-Parker Company was continued as manager of the apartment houses for respondent. Thomas L. Chase was respondent's agent

and was charged with the duty of looking after the management and sale of property that was acquired through the operation of the mortgage business of respondent.

Respecting the agency of the Metzger-Parker Company, it fairly appears that that company managed for the Interstate Finance Company the apartment house property until title was acquired thereto by respondent in February, 1935; that the remainder of the receipts applied upon the mortgage held by the respondent were turned over by Metzger-Parker Company to MacMaster, Ireland & Co., Inc., for the respondent. The record is not to the effect that the Metzger-Parker Company was authorized at that time to represent the respondent in any dealing with reference to these apartment houses.

After purchase of the property in 1928, appellant installed in the apartment houses additional furniture, upon which he owed six hundred dollars at the time of the transfer of the personal property to respondent. In the latter part of 1933, or sometime in 1934, appellant discussed with the Metzger-Parker Company, and with Thomas L. Chase, the matter of turning over the real estate and selling the personal property to respondent. No payments were made on the mortgage of the real property from March 5, 1932, to March 29, 1934, according to the testimony of Thomas L. Chase. Subsequent to the latter date, installments were paid on the mortgage.

In October, 1934, appellant offered to Mr. Chase, respondent's representative, a quitclaim to the real estate and bill of sale for the personal property in the apartment houses for five thousand dollars. Appellant finally agreed to accept three thousand dollars for the furniture and other personal property in the apartment houses. The testimony is in conflict as to the

understanding at that time of appellant and Mr. Chase, respondent's representative.

Appellant testified that, in answer to the inquiry of Mr. Chase respecting the existence of any indebtedness against the personal property, he stated there was an indebtedness for furniture amounting to six hundred dollars. When Mr. Chase asked whether appellant would take care of that indebtedness, the latter agreed to do so. Mr. Chase then asked appellant, "Is that all the debts there are against it; is there anything against the places?" To this interrogation, appellant replied, "That is all except the taxes," and Mr. Chase responded, "Yes, I know about the taxes."

The testimony of Mr. Chase is that the tentative oral agreement he made for the purchase of the furniture and furnishings in the apartment houses was that respondent would pay three thousand dollars therefor, but that, before the tentative agreement could be binding, same would have to be approved by respondent's city mortgage manager; that he was positive in his statement to appellant that the title to the personal property must be free and clear of all encumbrances of any nature whatever, and that any possible liens against the property must be removed. Mr. Chase further testified that appellant agreed thereto, and that he explained to appellant that respondent's custom when purchasing personal property was to incorporate such warranty in the bill of sale. No mention was made of the existence of unpaid taxes on the personal property which he understood he was buying without any encumbrance thereon and without any exceptions or reservations; that he submitted to respondent the proposal to sell to the respondent the personal property for three thousand dollars to be warranted as free and clear of all encumbrances, and that the tentative arrangement as submitted by him was ratified and ap-

proved by respondent's city mortgage manager in a telegram to Chase, October 30, 1934.

Appellant admits the execution of the bill of sale, and that he signed the affidavit that the property was free and clear of all encumbrances. He received the bill of sale, which he knew was a bill of sale, in Portland from Mr. Seitz, a lawyer of Portland, Oregon, who was interested financially with the appellant in the purchase and handling of the properties involved herein, and he signed and acknowledged that bill of sale before Mr. Seitz at the request of the latter and without reading it. Appellant is a man of extensive business experience, and he must have known that the arrangement with Chase was tentative and not binding unless approved by respondent.

Mr. Chase, on October 26, 1934, wrote the following letter to MacMaster, Ireland & Co., Inc., from which it is not inferable that respondent intended to purchase the personalty subject to any encumbrances, and that the deed and bill of sale were subject to approval by respondent:

"JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

OF

BOSTON, MASSACHUSETTS.

"McMaster & Ireland     At Seattle, Washington
"1002 Wilcox Building        October 26, 1934
"Portland, Oregon
"Gentlemen:

*Re: Loan 66919—Hudson*

"I have made arrangements with Mr. Agnew subject to approval by the Home Office to accept a deed to his real estate and a bill of sale to all furniture, electric refrigeration and other equipment in the premises at a price of $3,000.00. Mr. Agnew has agreed to warrant the bill of sale and to attach thereto receipts showing final payment made on furniture contract with Meier & Frank Co., and with the firm which furnished the electric refrigeration system, together with any other receipts he may have for expenditures covering

these chattels. The real estate is to be conveyed to us free and clear of all encumbrances with the exception of those of a public nature such as taxes and local improvement assessments.

"Both the deed and bill of sale will have to be examined and approved by our legal department before completing the transaction.

"I have requested Boston to wire me at San Francisco their approval to go ahead on this basis and will advise as soon as I hear from them.

"Very truly yours,<br>T. L. CHASE

TLC:S
C/c Metzger-Parker
C/c Home Office"

On November 2, 1934, Chase wrote the following letter to MacMaster, Ireland & Co., Inc., in which is the statement that the furniture and real estate are to be transferred free and clear of all encumbrances other than public taxes:

"<i>Air Mail</i>
At Los Angeles, California<br>November 2, 1934

"MacMaster, Ireland & Co., Inc.,
  "1002 Wilcox Building
    "Portland, Oregon
"Gentlemen:

<i>Re: Loan No. 66919—Hudson</i>

"In response to my wire to the Home Office they have wired me approval to purchase the furniture, furnishings, and equipment in the Malcolm-Salisbury apartments as follows:

" 'UNDER LOAN SIXTY SIX NINE NINETEEN HUDSON WE AUTHORIZE PAYMENT THREE THOUSAND DOLLARS FOR CHATTELS PROVIDING DEED TO SECURITY GIVEN OUR COMPANY TERMS YOUR LETTER OCTOBER TWENTY SIXTH'

"I believe you have a copy of the above referred to letter in your file.

"According to the arrangment which I made with Mr. Agnew the owner in Seattle, he is to furnish us

with a warranty bill of sale to the furniture, furnishings, and equipment including the frigidaire installation together with receipts from Meier and Frank and the company from which he bought the frigidaire equipment showing final payment on both contracts, and a deed to the real estate. Both the furniture and real estate is to be free and clear of all incumbrances other than public taxes. Please have the title company run the title on both the real estate and furniture, and furnish the Home Office with a preliminary title report to go forward with the deed and bill of sale. At the same time, call upon the Home Office to forward their check for $3000. with the return of the deed for recording.          Very truly yours,

                                         T. L. CHASE
                              City Mortgage Division

TLC/k
cc: Home Office
     Metzger-Parker Company"

On November 9, 1934, MacMaster, Ireland & Co., Inc., wrote to appellant as follows:

               "MacMaster, Ireland & Co., Inc.
                    1002 Wilcox Building
                      Mortgage Loans
                        Insurance
"In replying refer to loan No.      Portland, Oregon
"66919—Hudson                       November 9th, 1934.
"Mr. Jay Agnew,
"Centralia,
"Washington.
"Dear Sir:

"Mr. T. L. Chase of the John Hancock Mutual Life Insurance Company has written to us in regard to his conversation with you in Seattle and in which he advised that the John Hancock Mutual Life Insurance Company was to take title to the property known as the Malcolm & Salisbury Apartments together with all equipment therein in satisfaction of your mortgage and to pay you the sum of $3000. for the furniture equipment including the frigidaire and that you were to furnish us with receipts from Meier & Frank Company

from whom you bought the frigidaire and the equipment showing final payment of these accounts.

"On having the title extended to this property, we find that it stands in the name of Interstate Finance Company, an Oregon Corporation. Will you please advise us the name of the President and Secretary of this corporation in order that we may draw the necessary deed and bill of sale to complete this transaction.

"We do not know whether Mr. Chase explained to you the method required by the insurance company covering this transaction or not. They require that the deed and bill of sale be executed and forwarded to them for approval of their Legal Department. These will then be returned to us if satisfactory, together with their check for $3000. in favor of Interstate Finance Company at which time we will be instructed to turn this check over to your company.

"Yours very truly,

MacMaster, Ireland & Co., Inc.,

By Reade M. Ireland

RMI/EL                                 Vice President."

On November 20, 1934, MacMaster, Ireland & Co., Inc., wrote as follows to respondent:

"In replying refer to          Portland, Oregon
"Loan No. 66919—Hudson      Nov. 20, 1934.
"City Mortgage Division
"John Hancock Mutual Life Insurance Co.,
"Finance Department, Boston, Mass.
"Gentlemen:

"In accordance with instructions from your Mr. T. L. Chase, we have obtained from the Interstate Finance Company deed to the property in satisfaction of the mortgage together with a bill of sale for the chattels. We enclosed herewith these documents together with title report covering the property and the chattels. We are today putting through a request for your check for $3,000 payable to Jay Agnew in as much as he is the owner of the furniture and chattels and fixtures in the property, having obtained title from the Interstate Finance Co. We are also requesting check in favor of the Sheriff of Multnomah County covering taxes on

this property, which we will ask that you forward at the same time.

"We are also requesting payment of liens and enclose statements showing payment of delinquencies and payment of the liens in full.

"Yours very truly,
MacMaster, Ireland & Co., Inc.,
By Reade M. Ireland, Vice-President."

On November 19, 1934, appellant called at the office of Maurice W. Seitz in Portland, Oregon; and Seitz, pursuant to his agreement with Metzger-Parker Company, prepared a bill of sale of the furniture and fixtures. Mr. Ireland, of the firm mentioned, prepared the deed. The bill of sale prepared by Seitz named the Interstate Finance Company as the owner of the property. In order to meet respondent's objections, the Interstate Finance Company made a bill of sale to appellant, and appellant then executed the bill of sale to respondent. That bill of sale, which reads as follows, was executed November 20, 1934:

"Know All Men By These Presents, That in consideration of the sum of Three Thousand and no/100 ($3,000.00) Dollars, the receipt of which is hereby acknowledged, I do hereby grant, sell, transfer and deliver unto John Hancock Mutual Life Insurance Company of Boston, Massachusetts, its successors and assigns, all of the goods and chattels located in the Malcolm and Salisbury Apartments, located on property described as:

All of Block Twelve (12) Sullivan's Addition
to the City of Portland, Oregon, according to
the duly recorded plat thereof,

a list of which goods and chattels is attached hereto and made a part hereof.

"To Have and To Hold all and singular the said goods and chattels forever. And the said grantor hereby covenants with said grantee that he is the lawful

owner of said goods and chattels; that they are free from all incumbrances; that he has good right to sell the same, as aforesaid; and that he will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"WITNESS my hand and seal this the 20 day of November, A. D., 1934.      JAY AGNEW.      (SEAL)
"M. W. Seitz
"Witness.
"STATE OF OREGON ⎱
"County of Multnomah ⎰ SS.

"BE IT REMEMBERED, That on this the 20th day of November, A. D. 1934, before me, the undersigned, a Notary Public within and for the said County and State, personally appeared the within named Jay Agnew, personally known to me to be the individual described in and who executed the within instrument and to me acknowledged that he signed, sealed and executed the same as his free and voluntary act and deed for the uses and purposes therein mentioned.

"IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal the day and year last above written.
                    MAURICE W. SEITZ
            Notary Public for State of Oregon.
(SEAL)      My commission expires Jan. 23, 1938."

Respondent did not pay appellant the three thousand dollars until the affidavit, reading as follows, required by it, was acknowledged by appellant:

"STATE OF WASHINGTON, ⎱
"County of Lewis      ⎰SS.      AFFIDAVIT
"I, Jay Agnew, being first duly sworn, depose and say: That I was the owner and in possession of the personal property located in the Malcolm and Salisbury Apartments in Portland, Oregon, on November 19, 1934, the personal property being the same personal property described in a bill of sale executed by me to the John Hancock Mutual Life Insurance Company on the 19th day of November, 1934; that all of said personal property was fully paid for at the time of said

bill of sale and there were no encumbrances against said personal property.          JAY AGNEW.

"Subscribed and sworn to before me this 4th day of February, 1935.          W. H. INGRAHAM

Notary Public for Washington.

"My commission expires
Feb. 12, 1937"

██ The evidence as to the agreement the parties intended to make is conflicting. That is not sufficient. Reformation is a proper remedy where the parties have reached definite and explicit agreement, understood in the same sense by both, but by their mutual or common mistake, the written contract fails to express that agreement. Black on Rescission and Cancellation, § 11.

"When no question of fraud, bad faith or inequitable conduct is involved and the right to reform an instrument is based solely on a mistake, it is necessary that the mistake be mutual, and that both parties understood the contract as the complaint or petition alleges it ought to have been, and as in fact it was except for the mistake." 23 R. C. L. 327.

There is a direct conflict in the oral evidence upon the issue as to an agreement respecting the sale of the personal property subject to the lien for existing taxes. Where any doubt exists as to the intent of the parties, reformation will not be granted. *Carew, Shaw & Bernasconi v. General Casualty Co.,* 189 Wash. 329, 65 P. (2d) 689. See, also, *Herzberg v. Moore,* 153 Wash. 641, 280 Pac. 41; *Vanasse v. Cavey,* 167 Wash. 238, 9 P. (2d) 60.

"The foregoing exception embraces all suits brought expressly upon the mistake for the purpose of obtaining affirmative relief from its consequences. It is therefore settled that in the suits, whenever permitted, to reform a written instrument on the ground of a mutual mistake, parol evidence is always admissible to establish the fact of the mistake, and in what it consisted; and to show how the writing should be corrected in

order to conform to the agreement which the parties actually made. Although in such cases there is often some ancillary writing to aid the court, such as a rough draught of the agreement, written instructions, and the like, yet, in the absence of these helps, the court *may* grant relief upon the strength of the verbal evidence alone. The same is true in suits brought to rescind and cancel a written agreement on the ground of a mistake by one of the parties, whereby their minds were prevented from meeting upon the same matter, and no agreement was really made; and *a fortiori* when the ground of the relief is fraud. Parol evidence must be admitted in these classes of cases, in order to a due administration of justice. If the general doctrine of the law or the statute of frauds was regarded as closing the door against such evidence, the injured party would be without any certain remedy, and fraud and injustice would be successful. The authorities all require that the parol evidence of the mistake and of the alleged modification must be most clear and convincing,—in the language of some judges, 'the strongest possible,'— or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error. 2 Pomeroy's Equity Jurisprudence (4th ed.), 1755, § 859.

An apt authority is *Vanasse v. Cavey*, 167 Wash. 238, 9 P. (2d) 60, where we held that a reformation of a mortgage and note, to eliminate liability for a deficiency judgment, is not sustained by a clear preponderance of the evidence, although provision for a deficiency judgment had been crossed out of the printed forms, where there was a direct conflict in the oral evidence upon the issue as to any agreement eliminating such liability.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.