[No. 34861.   Department Two.   May 21, 1959.]

EMORY C. SLATER et al., Appellants, v. LEO W. MURPHY et al., Respondents.[1]

[1]Reported in 339 P. (2d) 457.

*Shiner & Arneil* and *Murray & Hanna* (*Robert F. Murray*, of counsel), for appellants.

*Bell, McNeil & Bowles* and *Engst & Phelps,* for respondents.

HILL, J.—We are here concerned with the sufficiency of the evidence to warrant the reformation of a deed, and with the sufficiency of the evidence to justify a finding of adverse possession.

The *locus in quo* is a triangular tract of land lying west of north Wenatchee avenue (which will hereafter be referred to as the highway), in an addition to the city of Wenatchee.

The side of the triangle, which runs approximately north and south is 87.5 feet; the side which runs approximately east and west is 50.1 feet; and the connecting side which is the south westerly line of the highway is 100.9 feet. The tract will hereafter be referred to as the triangle.

For a number of years prior to August, 1932, Angelo and Ada Van Cello, husband and wife, owned this small tract and a much larger tract lying east of the highway, which they cultivated and on which they lived. This portion east of the highway was subject to the lien of a mortgage to Anna T. Freudenberger.

Commencing in August, 1932, Angelo Van Cello negotiated with James Carmody, first with reference to a loan, and later with reference to a sale of the Van Cello property. Freudenberger, the mortgagee, during the same period of time was trying to get Carmody to buy the mortgage.

The trial court found that the evidence was clear, cogent, and convincing that Angelo Van Cello intended to sell and convey, and James M. Carmody intended to receive and acquire, not only the property lying east of the highway but the triangle lying west thereof.

Unfortunately, the attorney who drew the deed in which Angelo and Ada Van Cello were the grantors and James Carmody and his wife, Ruth, were the grantees, used the description in the mortgage to Freudenberger which did not include the triangle west of the highway. This deed was executed January 20, 1933, and by it the grantees assumed and agreed to pay the Freudenberger mortgage.

Even prior to Carmody's closing the transaction with the Van Cellos, the plaintiffs, Emory C. Slater and Golda Slater, his wife, had made arrangements with Mr. Carmody to buy the property which he was acquiring from the Van Cellos. Mr. Slater had been present when Angelo Van Cello had pointed out the triangle to Mr. Carmody as part of the property he was selling. A contract was entered into between the Carmodys and the Slaters on December 2, 1933, by which the former agreed to sell and the latter agreed to buy the property the Carmodys were acquiring from the Van Cellos; and the Slaters also assumed and agreed to pay the Freudenberger mortgage. Pursuant to that contract a deed was executed May 11, 1935, by the Carmodys to the Slaters. Again, although the Carmodys intended to sell and convey, and the Slaters intended to buy and acquire the triangle as well as the property lying east of the highway, the same description was used in the contract and later in the deed that had been used in the deed from the Van Cellos to the Carmodys, which, as we have seen, did not include the triangle.

The Van Cellos left Wenatchee early in 1933; and the Slaters took physical possession of the property east of the highway in February, 1933. They made their home there, and continued with the cultivation and development of the property, ultimately building a motel on a portion thereof. The Slaters did not discover that the triangular tract had been omitted from the Van Cello-Carmody deed and the Carmody-Slater deed until the spring of 1955.

In the meantime, both Angelo and Ada Van Cello had died; Angelo in 1942, and Ada in 1948. All parties are agreed that their three children were their only heirs and that the defendant and cross-complainant, Louise Van Cello Murphy, had succeeded to the interest of all of the heirs.

The Slaters commenced their action to secure a reformation of the Van Cello-Carmody deed, asking that their title be quieted against any claims by the Van Cello heirs. They also allege adverse possession since 1933.

Louise Van Cello Murphy, who appeared and denied

mutual mistake and adverse possession, asked that title be quieted in her to the triangle which her parents had never conveyed, and which, so far as record title was concerned, was still their property.

F. E. LaFollette, who owned property adjacent to the triangle on the west side of the highway, intervened and claimed title by adverse possession since 1937, and by trial amendment through his predecessors in title since 1925.

The trial court held that neither the Slaters nor LaFollette had proved title by adverse possession, and that the Slaters had not established their right to a reformation of the Van Cello-Carmody deed; that Louise Van Cello Murphy was entitled to have title thereto quieted in her as against the claim of LaFollette, who does not appeal (having entered into a contract to purchase from Louise Van Cello Murphy and her former husband), and the claims of the Slaters who are the appellants here.

We affirm the trial court, but with the feeling, which the trial court doubtless shared, that in this instance the law and justice may have parted company.

The difficulty is that the Slaters were unable to sustain the burden of proof that would divest the Van Cellos or their heirs (represented by Mrs. Murphy in this litigation) of title to the triangle on either the theory of mutual mistake or adverse possession.

The evidence to justify the reformation of a deed on the ground of mutual mistake must be clear, cogent, and convincing. *Liming v. Teel* (1955), 46 Wn. (2d) 762, 767, 284 P. (2d) 1110; *Akers v. Sinclair* (1950), 37 Wn. (2d) 693, 703, 226 P. (2d) 225, and cases cited; *Marks v. Mike Scaler's, Inc.* (1940), 2 Wn. (2d) 277, 281, 97 P. (2d) 1084.

As indicated, the trial court found that Angelo Van Cello intended to include the triangle in his deed to Carmody; there was, however, no direct evidence that Ada Van Cello, his wife, intended so to do, and no circumstantial evidence except the elapse of time.

The authority heavily relied on by the respondent and the trial court is *Itkin v. Jeffery* (1923), 126 Wash. 47, 216 Pac. 861. In that case we reversed a judgment directing

reformation of a contract for the sale of community real estate where the contract, as executed, did not contain a provision to which one of the sellers (the husband) had agreed with the purchasers relative to the payment of certain taxes by the sellers. There was no showing that the other seller (the wife) had agreed to anything except those matters specifically covered by the contract she had signed. The court there said (pp. 48, 49),

" . . . Primarily, the suit is for the reformation of a written contract of sale by a husband and wife of their community real property. Respondent James C. Jeffery had no power to represent or bind his wife in the sale and disposition of the property; nor is there a semblance of testimony, either direct or by inference, to indicate that Mrs. Jeffery ever heard or thought of any proposal or agreement concerning the payment of taxes on the property other than that written into the contract, until this suit was brought. There could not, therefore, have been any mutual mistake so far as she is concerned; and without her, there could have been no contract for the sale of the property.

" . . .

" . . .

"Since the contract sought to be reformed by this action was signed by both husband and wife, as it had to be to make it valid and binding, it cannot be reformed on the ground of mutual mistake, unless such mistake is traceable to both husband and wife, any more than a contract signed by only one of them, of itself, could not be enforced against both of them, as to their community property. There being no proof of any mistake on the part of Mrs. Jeffery, it follows that both parties to the contract were not mistaken. One of the parties was the community consisting of Mr. and Mrs. Jeffery, represented not by either one, but both of them."

■ The *Itkin* case has been cited with approval by the supreme courts of Colorado and Idaho. *Smith v. Anderson* (1950), 121 Colo. 175, 214 P. (2d) 366; and *Metropolitan Life Ins. Co. v. McClelland* (1936), 57 Idaho 139, 63 P. (2d) 657; and it is persuasive authority in the present case because of the lack of any direct evidence or any substantial circumstantial evidence to show the intent of Ada Van Cello with reference to the unmortgaged triangle west of

the highway; indeed, there is no evidence to show that she even knew she had any interest in it.

We do not, however, regard *Itkin v. Jeffery, supra,* as a conclusive holding that there can be no reformation where there is convincing circumstantial evidence that a wife intended something other than the conveyance or contract specifically states. That action was brought in April, 1922, to reform a contract executed in August, 1920; there was absolutely nothing to indicate that the wife intended anything other than the contract provided; and she was present in court to testify as to what her intent had been.

■ We feel that the evidence produced by the Slaters established the probability that Ada Van Cello, like her husband, intended to convey the triangle to Carmody; but

". . . Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only upon a certainty of the error. . . ." 3 Pomeroy's Equity Jurisprudence (5th ed.), 353, § 859a.

This statement from Pomeroy is quoted verbatim, and with approval, in *John Hancock Mut. Life Ins. Co. v. Agnew* (1939), 1 Wn. (2d) 165, 177, 95 P. (2d) 386; *Puget Mill Co. v. Kerry* (1935), 183 Wash. 542, 551, 49 P. (2d) 57, 100 A. L. R. 1220; *Blass v. Waldrip* (1934), 176 Wash. 324, 326, 29 P. (2d) 403; *Moore v. Parker* (1915), 83 Wash. 399, 401, 145 Pac. 440; *Hapeman v. McNeal* (1908), 48 Wash. 527, 529, 93 Pac. 1076.

The certainty of the error on the part of Ada Van Cello, upon which the reformation of the Van Cellos' deed to Carmody must be based, is not established by such clear, cogent, and convincing evidence that we can say that the trial judge or any reasonable man should have been convinced thereby.

As we turn to the consideration of the claim by the Slaters that they have established title to the triangle by adverse possession, we are confronted with the same difficulty as in the reformation phase of the case—a lack of proof.

■ For the reason heretofore indicated, the Slaters

have no color of title and the ten-year statute of limitations, which we quote, is applicable:

"The period prescribed in RCW 4.16.010 for the commencement of actions shall be as follows:
"Within ten years:
"Actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action." RCW 4.16.020.

The triangle is vacant property and, except on the side next to the highway, has nothing to indicate its boundary lines; and on its west and south sides there is nothing to separate it from the contiguous property owned by the intervenor LaFollette.

Three things only are relied on as showing adverse possession by Slater. A Cola Cola sign was placed on the property by a third party in 1934, which fell down or was removed in 1948, and its exact location was not fixed with any degree of accuracy. Slater testified he received merchandise credits for permitting this sign on the triangle.

A "Triple-A" sign was put up in 1948, and he received no monetary consideration therefor.

There was also a large Foster & Kleiser signboard, located, in part at least, on LaFollette's property, which Slater testified was put up in 1948.

There was also a mailbox erected by a neighbor at Mr. Slater's suggestion in 1950.

LaFollette was from time to time disking the property to keep down weeds; and had pulled out certain fruit trees in 1938 under a claim of right.

■ The elements of adverse possession have been repeated many times:

"Possession, to be adverse, must be actual and uninterrupted, open and notorious, hostile, and exclusive, and under a claim made in good faith. . . ." *Taylor v. Talmadge* (1954), 45 Wn. (2d) 144, 149, 273 P. (2d) 506; *Scott v. Slater* (1953), 42 Wn. (2d) 366, 368, 255 P. (2d) 377.

█ The Foster & Kleiser signboard, the "Triple-A" sign, and the mailbox were put on the triangle within the statutory period of limitation and availed nothing. The Coca Cola sign was on the property from 1934 to 1948, but no one knows exactly where. The absence of color of title affects the extent of the Slaters' possession and limits their claim to that portion of the property subject to actual possession. *Turnipseed v. Moseley* (1946), 248 Ala. 340, 27 So. (2d) 483, 170 A. L. R. 882; *Kingsley v. Jacobs* (1944), 174 Ore. 514, 149 P. (2d) 950, 954; *Bettack v. Conachen* (1940), 235 Wis. 559, 294 N. W. 57, 60. Nor did any of these things apprise the true owner of the fact that the plaintiffs were in possession of the property or that they were claiming possession. They neither placed the Coca Cola sign, the "Triple-A" sign, the Foster & Kleiser sign, or the mailbox; at most, they gave constructive notice to the Van Cellos that somebody was making use of the property, but no notice that it was the Slaters.

█ We have at least twice quoted with approval the following statement from 1 R. C. L. 700 (now appearing in 1 Am. Jur., Adverse Possession, §§ 139, 140).

"The words 'open and notorious possession,' as applied to the adverse holding of land by another, mean that the disseisor's claim of ownership must be evidenced by such acts and conduct as are sufficient to put a man of ordinary prudence on notice of the fact that the land in question is held by the claimant as his own. . . . It is, therefore, essential in all cases that the owner shall have notice to that effect. If he has actual notice that will, of course, be sufficient in itself. Where, however, there has been no actual notice, it is necessary to show that the possession of his disseisor was so open, notorious, and visible, as to warrant the inference that the owner must, or should, have known of it; otherwise a mere trespass might be evidence of ouster. . . ."

See *Skoog v. Seymour* (1947), 29 Wn. (2d) 355, 362, 363, 187 P. (2d) 304; *Downie v. Renton* (1932), 167 Wash. 374, 9 P. (2d) 372.

Neither the appellants, Mr. and Mrs. Slater, nor the intervenor, LaFollette, can be said to have exclusive possession

as against the other, or as against the respondent, Louise Van Cello Murphy. The trial court so found.

The judgment of the trial court is affirmed.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.

---

[*En Banc.* May 5, 1960.][2]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed.

MALLERY, J. (dissenting)—*Itkin v. Jeffery,* 126 Wash. 47, 216 Pac. 861, is in point and is controlling. It has never heretofore been cited in this state. It was a badly considered case, which makes justice unattainable under circumstances such as are here presented. I would overrule it now and nip its evil in the bud.

The error in that case was that it misapplied the requirement that both spouses join in a conveyance of real property. This unquestioned rule of law does not extend beyond the execution of the conveyance. Specifically, there is no requirement that a wife take part in the preconveyance negotiations nor could her voluntary and properly executed deed be set aside at her behest upon the ground that she blindly relied upon her husband and voluntarily but unwittingly executed the deed.

Of course, a wife can testify as to the expressed intentions and representations of her spouse and of herself also, if they existed.

Actually, what we are concerned with here is the burden of proof. Assuming that it has been adequately met as to the husband's mutual mistake with the adverse parties, there should not be a failure of justice because of the impossibility of proving a substance where a vacuum may very well exist. The universal approach of courts to such a situation is to indulge a rebuttable presumption for the purpose of requiring the adverse party to go forward with proof of a fact which, if it exists, is available to him.

[2]Reported in 351 P. (2d) 515.

Such a presumption should be indulged in this case. I dissent.

HUNTER, J., concurs with MALLERY, J.

FOSTER, J. (dissenting)—I dissent.

When all of the negotiations are by the husband alone, as in this instance, and the wife does no more than sign the conveyance, the husband's intention in making the sale should be attributed to her. I think *Itkin v. Jeffery,* 126 Wash. 47, 216 Pac. 861, should be overruled or, at least, modified to this extent.

FINLEY, J., concurs with FOSTER, J.

