[No. 22860. Department One. May 7, 1931.]

CHARLEY FERNANDEZ et al., *Respondents*, v. BENN AGOR et al., *Appellants*.[1]

*Rigg, Brown & Halverson,* for appellants.

*W. A. Hubbert* and *Richards, Gilbert & Conklin,* for respondents.

MITCHELL, J.—On February 15, 1926, Benn Agor, on behalf of his father, Peter Agor, entered into a conditional sales contract by which he sold and delivered to Charley Fernandez, Julius Fernandez, Joe Ansalas, and Bautista Echeverra, 3,434 ewes, 70 lambs and a camp outfit. After admitting part payment, the contract refers to the balance due as follows:

" . . . which said balance shall be paid with interest at 8% per annum, payable annually on January 1st. of each year hereafter, by paying to the vendor all of the net profits each year hereafter arising from the business commonly called the sheep business to be conducted and carried on by the vendees in the State of Washington with said described personal property, and such other property as may be acquired

[1]Reported in 298 Pac. 417.

by the vendees in connection with said business; said net profits to be determined according to a certain agreement bearing even date herewith, in which said agreement the vendor herein is party of the first part and the vendees herein are third parties.''

The other agreement of the same date was between Benn Agor, as first party, Peter Agor, and his wife, Henrietta Agor, as second parties, and Charley Fernandez, Julius Fernandez, Joe Ansalas, and Bautista Echeverra, as parties of the third part, and was signed by all of them. It speaks of the conditional sales contract of that date, and then says that the third parties shall conduct and carry on the sheep business by the buying and selling of sheep, lambs, and wool, and then provides:

"It Is Agreed that in carrying on of said sheep business the third parties shall lease from second parties, certain range now owned or held under lease by second parties, and such additional range as may hereafter be acquired by second parties, for a period of not less than five (5) years hereafter, and second parties agree that they will lease unto third parties all such range as may be hereafter acquired by them under lease or otherwise and which they now own or are entitled to possession of; and said third parties shall pay to second parties as rental for said range, a sum equal to 8% per annum on the amount of money that second parties shall have invested in said land, either as owner or lessee, said payment to be made on or before January 1st. of each and every year hereafter, but in no event shall the amount to be paid by third parties to second parties, exceed the sum of $2,400.00 per annum. In addition to said rent to be paid by third parties to second parties, said third parties shall pay to second parties on or before January 1st. of each year hereafter, the sum of $1,000.00 for a valuable consideration passing to third parties from second parties, which said $1,000.00, as well as the rentals paid by third parties to second parties, shall be con-

sidered as an expense in the operation of said sheep business, in determining the net profits.

"In addition thereto, and as a charge of expense against said business, first party and third parties shall each be entitled to the sum of $85.00 per month for labor and services rendered."

The agreement contains other provisions, including other expenses to be taken into consideration in determining the net profits of the business, not important in the present case.

Benn Agor and his father, Peter Agor, looked after the financial part of the business, and assisted in replenishing or substituting young ewes into the flock from year to year as the business required. In December, 1929, Charley Fernandez and associates on his side of the contract, brought this action against the parties on the other side of the contract for an accounting, setting up the contracts and alleging the carrying on of the sheep business, and further alleging failure and refusal on the part of the defendants to account. They further alleged that the net profits of the business already received by the defendants were in excess of the balance due for the sheep and camp outfit, under the terms of the contract between the parties.

Defendants answered, admitting the contracts, but denying all other allegations of the complaint; and by way of affirmative defense and cross-complaint for reformation in two particulars of the written contract between the parties, they alleged (1) that, by mutual mistake, the written contract failed to provide, according to the true agreement, that the plaintiffs, vendees, should pay the expense already incurred by the defendants in keeping the flock from January 1, 1926, to the date of the written contract, February 15, 1926; and (2) that, by mutual mistake, the written agreement provided that the defendants should receive a rental

for range of eight per cent per annum on the amount of money they had invested in lands owned by them, or held by them as lessees, and such additional range as might be thereafter acquired, for a period of not less than five years, not exceeding twenty-four hundred dollars per annum, while the real and true contract between the parties was that defendants should receive eight per cent per annum on money actually invested in range owned by them, and, in addition thereto, all moneys expended by them in rental for additional ranges needed, and that, so far as the contract limited the payment to twenty-four hundred dollars a year, it should be reformed.

The answer further alleged that such reformations, together with other items in their favor in the general account, would establish the fact that the plaintiffs were largely indebted to the defendants. The plaintiffs, by their reply, denied that there was any mistake in the provisions of the written agreements.

On the trial of the case, without a jury, the decision was in favor of the plaintiffs. The defendants have appealed.

The only assignment of error presents the matter of the denial of reformation of the contract. Relief was sought on the ground of mutual mistake, and Benn Agor, who attended to the matter for the appellants, testified in favor of the allegations of the cross-complaint in that respect. There was convincing testimony to the contrary.

Shortly before February 15, 1926, three of the respondents and Benn Agor entered into negotiations and had prepared a written agreement for the sale of only a half interest in the flock and camp outfit. This instrument was not signed by the parties. The fourth respondent came into the deal about that time, and plans were altered so that the respondents bought the

whole, instead of a half, interest in the flock and camp outfit. It appears that the unsigned instrument was prepared by an attorney from notes furnished by Benn Agor, the attorney being the same one who prepared the two written contracts involved in this action from notes furnished by Benn Agor. The attorney, not one of record in this action, had performed legal service for Peter Agor for years.

The testimony, almost without dispute, shows that, upon discussing among themselves the terms of the proposed contract, Benn Agor made notes for the preparation of it, and thereupon, several of the respondents being present, delivered the notes to the attorney, who, in the presence of such of the respondents and Benn Agor, dictated the two instruments according to the notes furnished. The three respondents and Benn Agor came back, probably the next day, heard the contracts read over by the attorney, Benn Agor holding or reading copies at the same time. Thereupon, the three respondents and Benn Agor signed the contracts. A few days later, the other respondents signed them, and then they were sent or taken to Peter Agor and his wife at Seattle, who signed them some days later. The instruments were kept in the possession or control of appellants, who never made any claim that they differed from the true agreement until this suit was brought.

As to the reformation sought, so as to charge the respondents with the expense of keeping the flock from January 1 to February 15, 1926, in addition to what has already been said of the testimony and facts, it clearly appears that the unsigned instrument was dated January 1, 1926, and therein the ewes were valued at fifteen dollars each, while in the signed contract of February 15, 1926, they were valued at sixteen dollars each, it being considered, as respondents' proof shows,

that this additional one dollar per head was intended to take care of the cost from January 1, 1926, though not so specified in the agreement.

As to the other matter—the cost of the range—the unsigned instrument spoke of eight per cent per annum interest on the amount Peter Agor had invested in lands that he owned, while in the contract signed there was added any lands afterwards acquired by Peter Agor, by lease or otherwise, not to exceed twenty-four hundred dollars per annum.

There is nothing ambiguous in the language of the contract in this respect, against which appellants complain and seek reformation. It differs from the language of the unsigned instrument which Benn Agor still had in his possession. Why should there be a difference unless one was intended? How did that language get into the contract? Respondents say there was no mistake about it. Benn Agor, representing the appellants, made the notes that were delivered to his own attorney, who thereupon, in the presence of Benn Agor, dictated the contract which was afterwards read over and signed and kept by appellants until this suit was brought, without any suggestion whatever of mistake.

On behalf of the respondents, clear and positive testimony shows there was no mistake about the cost of the range. Speaking of both summer and winter range their testimony was that "he [Benn Agor] said the range will cost twenty-four hundred dollars per year for all the sheep plus one thousand dollars for Peter Agor," and again, "he [Benn Agor] mentioned something about eight per cent on the range. He said eight per cent on some investment, but he said it should not be any more than twenty-four hundred dollars." The contract provides for one thousand dollars a year to

Peter Agor, over and above the provisions of the unsigned instrument.

The law is plain upon this subject. In *Erickson v. Poole,* 126 Wash. 130, 217 Pac. 715, we quoted with approval from a former case as follows:

" 'The rule is that, before a written instrument will be reformed, the evidence must be clear and convincing that the writing is not what the parties intended it to be, and that the mistake was mutual'."

The testimony in this case, in our opinion, does not meet the test. It does not clearly and convincingly support the demand for reformation.

Judgment affirmed.

TOLMAN, C. J., PARKER, HOLCOMB, and MAIN, JJ., concur.