[No. 27663. Department One. January 16, 1940.]

GEORGE N. MARKS, *Respondent*, v. MIKE SCALER'S, INC., *Appellant*.[1]

*Wernette & Crowley* and *E. D. Weller,* for appellant.

*M. E. Mack,* for respondent.

SIMPSON, J.—Plaintiff sought reformation of a contract of sale and recovery of damages occasioned by

[1]Reported in 97 P. (2d) 1084.

violation of the provisions of the contract. The court entered its decree reforming the contract and gave judgment for damages because of its violation by defendant.

Defendant, in presenting its appeal, urges that the court erred in rendering judgment of reformation, in fixing the amount of damages, and in its refusal to grant a new trial.

Appellant and respondent were engaged in the business of selling fruit and vegetables from market stands in the city of Spokane. Prior to the execution of the contract which is the subject of this controversy, appellant operated from two locations. At one, the Westlake market, at the southwest corner of Main and Post streets, he had two fruit and vegetable stands in the front of the building and a wholesale business in a room just back of the stands. The other stand, known as the Riverside food shop, was situated on Riverside avenue between Post and Lincoln streets. Respondent owned and operated a fruit stand known as the Washington market, located at the southeast corner of Washington street and Main avenue, in Spokane.

Mike Scaler and his wife owned all of the stock of appellant corporation, and we will hereafter refer to Mike Scaler as though he were the appellant.

Approximately one week prior to April 16, 1937, respondent was informed by Mr. Peterson, a salesman for one of the produce houses in Spokane, that Mike Scaler desired to sell his Westlake market. Accordingly, respondent called on appellant and inquired as to the sale price of the market. Appellant asked $7,000, respondent offered $5,500, and an agreement was finally reached whereby $6,000 was to be paid for the market, with the understanding that appellant was to reserve certain designated personal property located in the market. The parties agreed to meet at the office of

M. J. Luby, appellant's attorney, for the purpose of reducing the sales agreement to writing.

In accordance with that agreement, they met at Mr. Luby's office April 16, 1937. At Mr. Luby's direction, a receipt acknowledging payment of five hundred dollars of the purchase price was prepared and placed in the possession of appellant. The parties explained to the attorney the terms of their oral agreement. Later in the day, after having left Mr. Luby's office, the five hundred dollars was paid to appellant, respondent receiving the receipt therefor.

Saturday, April 17th, those who had been employed by appellant in the Westlake market remained in the employ of respondent. The next day, the two men who had conducted the wholesale division of appellant's Westlake business, Zander and Nash, removed from that location the personal property which had been reserved by appellant. Monday, April 19th, Zander and Nash resumed their activities in the wholesale business for appellant from his Riverside food shop. Nash received a substantial salary increase. Respondent paid the balance of the purchase price by a check dated April 20, 1937.

Much of the evidence is in disagreement. Appellant and Mr. Luby testified that the contract was dictated by Mr. Luby, prepared by his stenographer, and read and signed by both parties during the time they were in the attorney's office on April 16th. Their evidence, save that relating to the signing, was corroborated by the office stenographer.

Respondent testified that, while he was in the office, Mr. Luby made only some notes, and that the contract was not prepared at that time. He further testified that he did not sign the contract until several days later when Mr. Luby came in to collect the $5,500 balance, and that he did not read it at the time of sign-

ing for the reason that he was then very busy in his new market and felt that he could rely upon Mr. Luby's assertion that the contract was all right.

The evidence of appellant and his witnesses was to the effect that no agreement was ever made to sell the wholesale portion of the business conducted by him in Westlake market. On the other hand, respondent testified that he and appellant, at the time they made the oral agreement relative to the purchase of the market, definitely agreed that the sale included the stands, the wholesale department, and the good will of the entire business.

Mr. Peterson, who had informed respondent that appellant desired to sell his Westlake stand, testified that appellant had told him that he wanted to sell the two stands and his line of business conducted from the back room, and that he wanted to retire on account of poor health. Respondent stated that, when he called on appellant relative to the purchase of the market, Mrs. Scaler said in the presence of her husband: "Mike has made up his mind to sell the business because his health is not very good and he can't stand it any longer;" that appellant told him he was going out of business and said:

" 'You think I am crazy selling my place in Westlake's and going over to Riverside?' He said, 'I am moving my desk and chair and typewriter and those things and I am going to collect a few accounts and then after that I will retire from the business. I will turn it over to my son in a short time.' "

He further testified that it was specifically understood between himself and appellant that appellant was selling the retail stands and the wholesale business, and that appellant told Mr. Luby, at the time they were together in the attorney's office, that he was selling the wholesale and retail business to respondent.

While appellant denied that his agreement was to sell the wholesale business, the following occurred during the trial:

"Q. Your counsel asked you if you said anything to Mr. Marks about selling your wholesale business at the Westlake market. A. No, I didn't. Q. You didn't sell that to him? A. I took him in the back there and showed him what I was using it for. Q. What did you tell him you were using it for? A. I told him that I was using it for a supply room and delivery room and a place where the drivers could pick up the orders. Q. Did you tell him you were not selling him any wholesale business? A. No, I did not. There was never anything mentioned in that regard. Q. You intended to keep the wholesale business? A. No. Q. What did you intend to do with it? A. There was nothing said. I just showed him the space back there that I was occupying in that place."

Several other witnesses stated that appellant had told them that he was going to sell on account of his health, that he was sick and was going to take it easy, and go out on the lake.

In considering this case, we have in mind the principle of law relative to the reformation of written instruments as laid down by former decisions of this court to the effect that, in order to justify judicial reformation, the party claiming the equity must sustain the burden of producing clear, cogent, and convincing evidence of mutual mistake in the drafting of the instrument, and of what was the true agreement and intention of the makers. *Johnson v. Mortensen,* 155 Wash. 547, 285 Pac. 438; *Fernandez v. Agor,* 162 Wash. 475, 298 Pac. 417; *Robinson Lettuce Farms v. Symons,* 163 Wash. 351, 1 P. (2d) 300; *Vanasse v. Cavey,* 167 Wash. 238, 9 P. (2d) 60; *Huston v. Graham,* 169 Wash. 521, 14 P. (2d) 44; *Spencer v. Patton,* 179 Wash. 50, 35 P. (2d) 768; *Puget Mill Co. v. Kerry,* 183 Wash. 542, 49 P. (2d) 57, 100 A. L. R. 1220; *Friend v. Continental Coal Co.,* 186

Wash. 102, 56 P. (2d) 1000; *Carew, Shaw & Bernasconi v. General Cas. Co.,* 189 Wash. 329, 65 P. (2d) 689.

The trial judge, in his memorandum opinion, summed up the evidence very clearly and indicated his conclusions concerning the facts as follows:

"So far as the oral testimony is concerned, standing alone it does not supply the measure of proof required, but, as is often the case, it seems to me that the conduct of the parties here tells the true story clearly, cogently and convincingly where words fail.

"It is admitted by the parties that on the 16th day of April, 1937, the parties met at the office of Mr. Luby in Spokane, Washington, and informed him that the defendant was selling to the plaintiff. Mr. Luby testified that he thereupon made out a receipt, plaintiff's Exhibit 1. The receipt indicates plaintiff paid $500, 'to apply on the purchase price of that certain merchandise and business consisting of fruit and vegetable stands located in Westlake's Market, at a total price of $6000.' I am convinced that the parties had in mind that one was selling and the other was buying the entire business of defendant in the Westlake market, both retail and wholesale, but I do not believe that even Mr. Luby knew that there was a wholesale business in connection with the retail business operated by defendant in Westlake's market. Plaintiff's Exhibit 1 indicates that whatever the business consisted of it was the intention of defendant to sell the entire business. Otherwise, Mr. Scaler, the owner of defendant, would have specifically excluded the wholesale portion thereof, or would have specifically limited the sale to the retail business."

We are in agreement with the findings of the trial court. There is no question but what both parties contemplated respondent's occupation of the entire premises at Westlake, including the back room from which appellant's wholesale activities had been operated. It is also conceded that respondent purchased all of the equipment and personal property used by

appellant in conducting both businesses with the exception of certain specifically reserved items. By especially excepting these items, a strong inference is created that, had he intended doing so, appellant would also have particularized with reference to the exclusion of the wholesale portion of the business which he conducted, together with the retail, at the Westlake location.

This reasoning finds strong support in the conduct of the parties immediately following the conference in Mr. Luby's office. Appellant admits that he informed the wholesale men, Zander and Nash, that respondent had bought out the Westlake business, and that respondent wanted them to continue at Westlake working for him. Unquestionably, both men did work for respondent the next day, the Saturday on which respondent took possession, and carried on their work in the wholesale department upon the usual basis. Zander testified that he made his customary calls upon over thirty of his wholesale customers.

The record discloses nothing to indicate that this was not done with appellant's knowledge and apparent expectation. Appellant made no immediate attempt to retain the services of these men; each was rehired upon his own voluntary expression of preference for employment with appellant. The services of the outside salesman, Zander, were of vital importance to the retention, by either party, of the wholesale trade. It is almost certain that appellant would have made definite arrangements in advance to continue the employment of these men, had it been his intention to withhold the wholesale business from respondent.

The evidence, taken as a whole, clearly shows that appellant had been in business a great many years,

that he was tired and physically unwell, and that he desired to quit business and retire to a home on the lake. Why he changed his mind about retiring, is not indicated by the record. As a matter of fact, his business at Westlake was a combination of the retail and wholesale trade, though carried on in two separate departments. When, after the sale to respondent, appellant took unto himself the so-called wholesale department, he appropriated a portion of the whole business he had been conducting at the Westlake market, and had sold to respondent.

■ It is next urged that the court was in error in the amount of damages it allowed to respondent. The only evidence presented to the court, touching upon the value of the wholesale business, was given by respondent. He testified that the business as a whole was worth what he paid for it, $6,000, that the wholesale business was worth $4,000, and that the retail portion alone was worth from $1,500 to $2,000. Appellant contends that respondent, in computing the value of the stores, did not take into consideration the good will of either the retail or wholesale business. There is nothing in the record which in any way indicates that the respondent did not consider the value of the good will.

Concerning this phase of the case, the court said in his memorandum opinion:

"Plaintiff testified that the business he purchased was the entire wholesale and retail business of defendant as the same was centered and operated from Westlake's market and that had the wholesale business been delivered to him in accordance with the purchase, it would have been well worth the sum of $6000, the agreed purchase price. He further testified that the entire retail business of defendant in Westlake's including the merchandise equipment and good will, was not worth to exceed $2000, the itemized list of values

he gave at the trial aggregating $1675. This testimony is entirely undisputed and I am, therefore, bound by it. The question of the value of the retail phase of Westlake's market was a vital issue in this case, and by failing to meet that issue defendant has, in effect, admitted the truth of plaintiff's contention."

■ Appellant did not raise any question in the trial court relative to the admission of respondent's testimony concerning value. The trial court was not given an opportunity to pass upon the admissibility of the testimony nor to compare it with other evidence relative to value. It is too late to urge the question on appeal. *Dahlstrom v. Northern Pac. R. Co.*, 98 Wash. 390, 167 Pac. 1078; *Parsons v. Tracy*, 127 Wash. 218, 220 Pac. 813; *Mosler v. Woodell*, 189 Wash. 583, 66 P. (2d) 353; *State v. Pappas*, 195 Wash. 197, 80 P. (2d) 770.

■ Finally, appellant contends that the court was in error in refusing to grant a new trial.

The affidavits in support of the motion related to the value of certain personal property used in the Westlake market which had been included as a part of the equipment purchased by respondent.

Appellant stated in his brief relative to a motion for a new trial:

"Upon the trial of this cause, appellant was firmly convinced and is still convinced that respondent did not establish a case calling for the reformation of this contract and for that reason, and that alone, did not present any evidence as to the value of property transferred."

Litigants cannot neglect to present evidence on a given matter in litigation and then hope to secure a new trial after the court has decided other questions contrary to their expectations. The granting or denial of a motion for a new trial is discretionary with the trial judge. We are satisfied that he did not abuse

that discretion in denying the motion for a new trial presented in this case.

Finding no error, we affirm the judgment.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.