### *In re* LYDDY's WILL.

(*Surrogate's Court, New York County.* May 10, 1888.)

1. WILLS—TESTAMENTARY CAPACITY.

The testimony of the three subscribing witnesses to a will, showing testamentary capacity, will prevail over the opinion of an expert, where to give credence to the latter would be to impute perjury to the former.

2. SAME—UNDUE INFLUENCE.

Where testator received all his property from his wife without consideration, and several years before his death made a will giving it all to her for life, and expressed an intention at other times to give her his property, and there is no direct evidence of the exercise of undue influence over testator, undue influence will not be inferred from the fact that the will gives the property to the wife to the exclusion of testator's relatives.[1]

In the matter of proving the will of Daniel R. Lyddy, deceased.

RANSOM, S. As I said when this proceeding was about concluded, so far as the evidence is concerned, this is one of a class of cases involving simply a question of fact, and a very simple one at that, which ordinarily come up, and which can be fairly, correctly, and accurately disposed of by the court at the conclusion of the testimony, aided as the court has been in this case by very able counsel, who have carefully pointed out, according to their contention, such facts as they deemed established by the evidence. In this proceeding I have given my best attention to the evidence, and I have been very much instructed and aided by the counsel on both sides. I have intended to apply the rules of evidence as liberally as possible, within the doctrine of well-considered cases. The greatest latitude consistent with the most liberal construction of the statutes and the adjudicated cases has been given to the contestants, not because this proposed will is in the least unnatural or unjust, but because it is my conception of the duty of the court, in proceedings of this character, to afford the fullest opportunity to proponent and contestant to make out their contention. In thus administering the law, I appreciate the danger of committing error, but, if such should unfortunately be the case, the result would be upon the side, at least, of a sincere desire on my part that the whole truth should appear.

This paper, propounded as the last will and testament of Daniel R. Lyddy, was executed according to the statute in every form and particular, and, at least, so far as one subscribing witness is concerned, there is no suggestion of any interest whatever in him in favor of any person named in the paper or in the estate of the decedent. As to the other two subscribing witnesses, the evidence established, possibly, that they were on more friendly terms with

---

[1] On the general subject of undue influence in the execution of a will, see Kerr v. Lunsford, (W. Va.) 8 S. E. Rep. 493, and note; In re Hall's Will, 3 N. Y. Supp. 288, and note; Latham v. Schaal, (Neb.) 41 N. W. Rep. 354, and note.

the decedent and his wife, the proponent, than the contestant of record, or the more active contestants, the brothers of the deceased. The issues presented, and which are disposed of by my decision, are raised in this case as they are in all probate cases, by the objections filed to the probate of the will; and in this proceeding the objections cover every ground known, I think, to lawyers and to courts, on which the granting of probate ought to be refused.

The *first* objection is that the paper propounded as the last will and testament of Daniel R. Lyddy is not the last will and testament of the said Daniel R. Lyddy, deceased. That objection obviously must be overruled.

The *second* objection is that Daniel R. Lyddy, deceased, did not subscribe the said paper writing or propounded will at the end thereof in the presence of both or each of the alleged attesting witnesses thereto. That objection must be overruled, for the reason that is patent to all that it is not sustained, and that there is no pretense of any evidence to sustain it on the part of the contestants, and no suggestion of theirs that this will was not executed in form by Daniel R. Lyddy, and acknowledged and declared in the presence of the subscribing witnesses to be his last will and testament.

*Third.* "That said Daniel R. Lyddy did not acknowledge the subscription of said paper writing or pretended will to each or both of the alleged witnesses or attesting witnesses thereto." That objection is overruled for the reason just given.

*Fourth.* "That Daniel R. Lyddy, deceased, did not, at the time of making such subscription, or at the time of the alleged acknowledgment of the same, declare said paper writing or propounded will to be his last will and testament." That objection fails for the reasons already given.

*Fifth.* "That each of the attesting witnesses to the said paper writing did not sign his or their own names as witness or witnesses thereto at the end of the said paper writing or propounded will at the request of the testator." The testimony is entirely one way. There is no contradiction or pretense of contradiction in respect of the execution by Daniel R. Lyddy of this will, and of the statements made by him to the witnesses, and that they signed it at his request.

*Sixth.* "That, at the time of the alleged execution of the said paper writing or propounded will, the said Daniel R. Lyddy, deceased, did not have and was not possessed of testamentary capacity, and was not in law competent to make a will, or to make and execute the paper writing or propounded will in question proposed by the proponent as the last will and testament of the said Daniel R. Lyddy, deceased." The drift of the testimony in this proceeding has been, on the part of the contestants, apparently for the purpose of sustaining that objection. The argument of the learned counsel for the contestants has seemed to me to abandon that objection, and to rather admit that the decedent had capacity to make the paper; that he was not incapable, but that he was defrauded, and that some proposed testamentary disposition of his had been interrupted and interfered with by fraud and by undue influence, and that but for such fraud practiced upon him he would have made a different will, or, in other words, that the paper propounded, procured in that way, is not his will at all, and the reason is because of the fraud practiced upon him, and not because he was not capable of making a will. However that may be, the testimony on the part of the contestants was evidently adduced for the purpose of enlightening the court with respect to the allegation in the sixth objection, to-wit, that the deceased was not possessed of testamentary capacity. Now, upon that point, it is not my purpose to refer to the testimony of any of the witnesses in detail, or even to refer to the testimony of any of the witnesses by their names, except one. A gentleman was called this morning as a medical expert, whose experience as an expert witness in cases where the mental capacity of persons is at issue is well known to us all, and it was testified to by him. Upon reading the testimony of the nurse, and

upon listening to a recital of facts claimed by contestants' counsel to be proved, and, for the purposes of my object in remarking, admitted to have been proved, this gentleman (Dr. Hamilton) gave his opinion that the act of Daniel R. Lyddy in executing the will, and his conversation with the witnesses, as sworn to by the three subscribing witnesses, could not really have taken place if Daniel R. Lyddy was actually in the condition, as to the temperature of the body, delirium, violence, etc., described in the question. So it comes to this, that if any credence is to be given to the opinion of this medical expert, I am compelled to find as a fact in this case that each of the subscribing witnesses has come here and committed willful perjury. There is no possible escape from that conclusion, and, in order to sustain Dr. Hamilton's opinion that Mr. Lyddy was incapable of making a will, I must find that these three subscribing witnesses—Mr. Lardner, who was an utter stranger to Mr. Lyddy and his family, and Mrs. Crocheron and Mr. O'Donoghue, who do not appear in this case to have been pecuniarily interested at all in the estate—have, as I say, committed willful, corrupt, and wicked perjury, and that they formed that design at the time that this paper was signed in their presence. I need not say that it is impossible for me—and I suppose and believe it to be impossible for anybody—to come to such a conclusion, and hence the learned counsel for the contestants' apparent substantial abandonment of the theory which I have already referred to, that Mr. Lyddy was not capable of making a will, but, on the contrary, that he probably had testamentary capacity, although he was sick and enfeebled, and that he had been or was imposed upon, and was defrauded from doing something else,—from making some different testamentary disposition.

So, then, we come to the remaining objection, (which is very much illuminated by a very long statement of facts as they were supposed to exist, and in many respects as they have been sustained by the proof,) that this paper propounded as the will was procured by fraud and by undue influence. It is a very important question for both sides of this proceeding that such determination as shall be made shall be right, and it is the earnest desire of the court that certain well-grounded legal principles shall be followed absolutely. The law is settled beyond any peradventure.

*First.* The law is that two things must be made out by those who support a will,—the formality of the instrument, and the sanity of the person executing it. I have already referred briefly to the facts which seem to sustain the proposition here, that that burden has been safely borne by the proponent.

*Second.* If a dominion was acquired by any person over a mind of sufficient sanity for general purposes, and of sufficient soundness and discretion to regulate his affairs in general, yet if such dominion or influence were acquired over him as to prevent the exercise of such discretion, it would be inconsistent with disposing mind, and would certainly destroy the will. Without intending to take any time to call attention especially to the testimony, it is enough to say, for my present purpose, that in my judgment there is no evidence whatever in this case which should put in operation that principle of law as against this paper. Under well-settled principles which I have endeavored to state, "in order to constitute a sound and disposing mind, a testator must not only be able to understand that he is by his will giving the whole of his property to one object of his regard, but that he must also have the mind to comprehend the extent of his property, and the nature of the claims of others, whom by his will he is excluding from a participation in that property." A single word in regard to that proposition and the facts in this case. There is no doubt in my mind, from abundant proof here, that the decedent came into the ownership and possession of the larger part of whatever property he had the legal title to when he died, by gift or donation from his wife, the proponent of this will, without money consideration, or without any other consideration than that of her love and affection and her confidence

in him.   Then, I say, that it would have been very natural that he should have had the testamentary disposition which, by undisputed evidence in this case, has been proven most emphatically, without objection and without possible objection, that all the property he had should go to his wife.   That disposition has been manifested first by the will of 1880, and which excluded everybody except his wife, during her life, and then it is manifested by such conversations as have been proven, between himself and different witnesses, down to the time that this paper was prepared, (which is offered for probate,) several months before his death.   The courts have held repeatedly that influence, to be undue, must be such as worked some wrong to some one.   I am unable to see, in this case, that any wrong has been worked to any one,—any moral wrong,—upon the finding that I make, that this entire property, whatever it was, with the exception of some moderate valuation to be put on some personal articles of the decedent before his marriage, came to the decedent from his wife; and to have bestowed that property upon his own relatives would have been an unusual and an unnatural thing to do, and to deprive them of her property, and bestow it upon her, it seems to me works no wrong, but, on the contrary, it is what I think they might reasonably expect to be done.   Again, the courts say that undue influence is the control of another will over that of a testator, whose faculties have been so impaired as to submit to that control so that he has ceased to be a free agent.   There is no evidence in this case that there has been any influence exercised over Mr. Daniel R. Lyddy at all in respect to this paper, by anybody.   The inferences that are sought to be drawn do not sustain the allegations, in my judgment, and they do not tend to sustain them.   Undue influence which will work any advantage to a party alleging it must be such as amounts to a moral coercion. It must be an act done by the testator in obedience—practically blind obedience—to the demand, or to the exertion of the influence which is alleged, and which would, under those circumstances, be undue and improper, in order to work a rejection of a paper, or a judgment declaring a paper thus executed to be void.   I might, of course, multiply authorities which have been accumulated for many years in this state upon this same general proposition.   Each gives facts to sustain it which were in some respects like the facts of some other case, but here we have facts which are absolutely within the principle and doctrine of every case upon this subject that I have been able to find, and I have no hesitation whatever, and have no doubt in my own mind, of course, with regard to the proper disposition of this controversy.   The testimony of one witness which had much influence upon my mind with reference to the previous testamentary disposition of Mr. Lyddy, consistent with this proposed paper absolutely, was that of a gentleman from the state of New Jersey, a lawyer by the name of Muirhead, who testified to a conversation with Mr. Lyddy in the latter part of July, 1887, in which he said that it was not necessary for him to practice law, as his wife was very good to him, and he said: "Everything I have depends upon my wife, and I propose everything I have shall go to her, and I propose she shall have everything."   Those were his words.   There is a witness who is absolutely disinterested; and it is impossible for me to believe that that witness came into court and testified to falsehood that established the testamentary intention of the decedent, and I therefore hold that the contest of this paper must fail, and that it must be admitted to probate, and a decree to that effect may be presented under the rule for settlement.