Argued April 24, affirmed September 17, rehearing denied October 22, 1929.

# GEORGE H. WYCKOFF ᴇᴛ ᴀʟ. *v.* HOWARD MAY-FIELD.

(280 Pac. 340.)

For appellants there was a brief and oral argument by *Mr. Gus Newbury.*

For respondent there was a brief and oral argument by *Mr. Porter J. Neff.*

COSHOW, C. J.—■ It is the settled law of this state that a line running to the bank of a stream or to a stream which is non-navigable extends to the center or thread of the stream. There is no pretense that Rogue River is navigable at the place in dispute: *Minto* v. *Delaney,* 7 Or. 337; *Micelli* v. *Andrus,* 61 Or. 78, 85 et seq. (120 Pac. 737), and authorities therein cited.

█ The meander line is placed for the purpose of computing the acreage within the boundaries. The stream is the real boundary, not the meander line, whether the course is described as extending to the bank of the stream or to the stream itself: 9 C. J. 189, § 69; *Micelli* v. *Andrus,* above; *Nebraska* v. *Iowa,* 143 U. S. 359 (36 L. Ed. 186, 12 Sup. Ct. Rep. 396).

█ Addition to land by accretion or loss by avulsion causes the boundary to change with the change in the thread of the stream, but where the change is sudden and violent, the boundary remains the same, that is, the thread of the stream as it was as originally surveyed: *Philadelphia Co.* v. *Stimson,* 223 U. S. 524 605 (56 L. Ed. 570, 32 Sup. Ct. Rep. 340). No evidence was introduced by plaintiffs of any change in Rogue River at the place in dispute between 1859, when it was originally surveyed and 1877, the earliest testimony adduced as to the location of the stream. A Mr. Pankey, who was introduced by defendant, testified that in 1877, when he first became acquainted with the place, the gravel-beds were south of the river. The disputed gravel-pit was outside of plaintiffs' land. Other witnesses testified to the same fact. Plaintiffs do not seriously question the truthfulness of this testimony but rely solely upon the testimony of their surveyor and claim a presumption in their favor to the effect that any change occurring between 1859 and 1877 was made by sudden and violent action of the river, and for that reason the boundary remains the thread of the stream as it was in 1859. The witness Powell for plaintiffs testified that the description of the land owned by plaintiffs as made in 1859 embraced within plaintiffs' land one of the gravel-beds.

A rule of construction of description is stated thus:

"When a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road, or the thread of the stream, are included in the conveyance, except where the road or bed of the stream is held under another title." Or. L., § 878, subd. 4.

Another rule is:

"When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurements, either of lines, angles, or surfaces, the boundaries or monuments are paramount." Or. L., § 878, subd. 2.

■ Applying the rule that the permanent and visible boundaries or monuments control over measurements, the description of plaintiffs' land, extending as it does to Rogue River and thence down the stream with the meanders thereof, prevails over the length of the lines described as running into the river. Because of the permanency of a stream as a fixed monument the presumption is that the river in 1877 was substantially the same as it was in 1859: 9 C. J. 271, § 300. Indulging that presumption, any change that may have occurred in the stream of Rogue River between 1859 and 1877 was by accretion according to the record. The thread of the stream is presumed to be substantially the same in 1877 as it was in 1859. There is undisputed testimony that there was a sudden and violent change in the thread of Rogue River at the place in dispute between 1891 and 1900 by which change the channel of Rogue River was moved south by sudden and violent action of the river to some 1,500 feet south of the gravel-bed in dispute. Prior to that sudden change the gravel-beds, according to the undisputed

testimony of the witnesses, were south of the boundaries of the land belonging to plaintiffs because they lay south of the channel of the Rogue River which was then the south boundary of plaintiffs' land. By that sudden change of the channel of Rogue River the south boundary of plaintiffs' land was not altered. The south boundary remains as it was prior to the sudden and violent change and north of the disputed gravel-pit; consequently as a legal question the gravel-bed in dispute did not belong to plaintiffs at the time the gravel was sold to the county. There is no dispute about the evidence. The only controversy is the application of the law to the facts and the order of proof: 9 C. J. 207, 208, 212–214; *Hennigan* v. *Mathews*, 79 Or. 622, 625 (155 Pac. 169). In a presumption in favor of a permanence of boundary lines, the burden of proof is on the one alleging that the location of the line has been changed by the action of the forces of nature: 9 C. J. 271, § 300.

■ Plaintiffs, having alleged that the gravel-pit in question was their property, had the burden of proof to establish that allegation. Plaintiffs rely for their evidence for that purpose upon the claim that the presumption is that the channel of Rogue River was changed by some sudden, violent force some time prior to 1877, but as we have seen from the authorities the presumption is to the contrary, that is, the presumption is, following the rule of the value of natural monuments or fixed boundaries, that if any change occurred at all it was by accretion and not by a sudden and violent force; consequently plaintiffs failed to adduce any evidence upon the material allegation of their ownership to the gravel-bed.

The order of the court allowing the motion for a directed verdict in favor of defendant must be sustained. The judgment is affirmed.

AFFIRMED. REHEARING DENIED.

BELT and BEAN, JJ., concur.

BROWN, J., absent.