Argued May 9; reversed June 27, 1944

KINGSLEY ET AL. *v.* JACOBS ET AL.

(149 P. (2d) 950)

*L. L. Ray,* of Eugene, for appellants.

*Lawrence T. Harris,* of Eugene (Harris & Bryson, of Eugene, and Reese Wingard, of Eugene, on the brief), for respondents.

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY and HAY, Associate Justices.

HAY, J.

The plaintiff, F. R. Kingsley, brought this suit to quiet title to certain real property. The amended complaint sets forth that the tract in dispute is a part of the west half of the Alexander Goodpasture and Wife Donation Land Claim, in Lane County, Oregon. In the neighborhood of the northwest corner of this claim, it was bounded for a short distance by the right bank of the meandered channel of the Willamette River. Some time prior to 1894, the river cut a new channel, traversing the claim from south to north, and thereafter ceased to flow in the meandered channel. About the year 1900, the river divided into two channels at a point about a mile south of the south line of the D. L. C., cutting a new channel northwesterly, west of the original meandered channel. Thereafter, for some time, it followed both channels, but gradually abandoned the east channel (that which traversed the claim), until eventually no water flowed through it except at times of flood.

Elizabeth Gillespie, (relict of Alexander Goodpasture), then owner of the D. L.C., on March 26, 1904, conveyed to Richard H. Shacklett all the land therein lying west of the east channel. The description follows:

"Beginning at the southwest corner of the Alexander Goodpasture donation land claim, being claim

No. 58 in t 17 s r 4 w., and claim No. 78 in t 17 s r 3 w., thence east on south line of said claim about 50 chains to the west bank of the east channel of the Willamette River, thence northerly along said bank to the north line of said claim, thence westerly along the north line of said claim to the northwest corner thereof thence south to the southwest corner and place of beginning, containing 30 acres of land more or less, in Lane County, Oregon.

"Together with right of way from these premises on the present travelled roadway eastward to the county road."

The east channel at that time was in fact non-navigable.

On October 1, 1909, Shacklett conveyed to plaintiff real property described as follows:

"Beginning at the N. W. corner of the Alex King Donation Land Claim No. 55 in T. 17 S. R. 3 W. thence South 102 links; thence S. 63° 05′ W. 4.67 chains; thence S. 37° 34′ W. 8.40 chains; thence west 16.50 chains to the East line of sec. 13 T. 17 S. R. 4 W.; thence N. 12° 3′ W. 5.41 chains; thence N. 29° 55′ W. 8.35 chains; thence N. 50° E. to intersection of North line of the Alex Goodpasture Donation Land Claim No. 78 in said Township; thence Easterly on North boundary of said claim No. 78 to intersection of a line extending N. 18° 52′ W. from a point of North line of said claim No. 55, 5.32 chains East of N. W. corner thereof; thence S. 18° 56′ E. to a point 1.92 chains North of said North line of Cl. No. 55; thence S. 27° 04′ W. 1.77 chains; thence N. 88° 24′ W. 1.30 chains; thence S. 87° 10′ W. 2.34 chains to place of beginning containing 48.73 acres more or less, in Lane County, Oregon."

It is alleged that the east line of this tract, running from the south to the north line of the Goodpasture D. L. C., was surveyed and ran along the west bank of the east channel, as it then existed, and that the

land conveyed actually bordered on said stream. It is alleged further that, long prior to October 1, 1909, the meandered channel of the Willamette River, which formed the north boundary of the premises conveyed by Shacklett to plaintiff, had been abandoned by the river and had become filled in. A portion of the dry bed of the meandered channel was purchased by plaintiff from the State Land Board. Shacklett died in 1919, and his property passed to his widow, Amelia Shacklett. Thereafter, Amelia Shacklett died testate, and, by her will, she devised her entire estate to her daughter, Susie Larsen. On April 2, 1941, Susie Larsen and her husband quitclaimed to plaintiff the following described property:

"Beginning at a point on the South line of the Alexander Goodpasture D. L. C., being claim number 58 in Township Seventeen (17) South Range 4 West of Willamette Meridian, and claim number 78 in Township Seventeen (17) South Range 3 West of Willamette Meridian 2923.8 feet East from the Southwest corner thereof, which point is also the Northwest corner of the Alex A. King D. L. C. number 55, thence East 650.0 feet, more or less to the West side of a slough which was formerly the Willamette River and then the East Channel of the Willamette River, thence in a northerly direction meandering the West side of said slough to a point where said line intersects the North line of said Alexander Goodpasture D. L. C., thence West on the North line of said Alexander Goodpasture D. L. C. 842 feet more or less to a point which is 396 feet south and 8533.8 feet West of the Northeast corner of said Alexander Goodpasture claim number 78, thence South 28° 30' West 248.26 feet, thence South 18° 56' East 940.0 feet, thence South 27° 04' West 116.82 feet, thence North 88° 24' West 85.8 feet, thence South 87° 10' West 154.44 feet to the point of beginning, all in Section 18, Township 17 South

of Range 3 West of the Willamette Meridian, in Lane County, Oregon, together with all the littoral, riparian and shore rights thereunto belonging or in any wise pertaining.''

It is alleged that, at the time of the delivery of the deed from Shacklett to plaintiff, the east channel of the Willamette River, where it crossed the Donation Land Claim, was a flowing stream which, at normal high water, filled its entire bed. The flow gradually decreased and finally ceased altogether except at times of flood. As the water receded, it formed a slough along the east side of the bed of the channel, and water stands in this slough throughout the year. The westerly portion of the bed of the stream, from the west bank thereof eastward, was gradually abandoned, and filled up with gravel, sand, silt and earth until, from the west bank to the present water's edge of the westerly side of the slough, it became dry land, attached to what was formerly the west bank. Plaintiff claims to have been the owner and in possession of the premises for more than ten years prior to the commencement of this suit, and alleges that the defendants claim and assert an interest therein, but that such claims are without right. A decree is prayed for, quieting plaintiff's title as against any claims by the defendants.

Defendants, while admitting the execution of the various instruments of conveyance referred to above, make a general denial of the remaining allegations of the amended complaint.

For a first affirmative defense, they say that on April 21, 1910, Thomas A. Goodpasture and William L. Goodpasture became owners in fee simple, through

a certain conveyance from the heirs of Elizabeth Gillespie, of the following described real property:

"All that part of the following described real property lying west of the County Road No. 302, to-wit: Beginning at a point 32.97 chains West of the Northeast corner of D. L. C. No. 78, Notification 3904, in Township 17, South Range 3 West of Willamette Meridian, and running thence West 19.21 chains to the most northerly Northwest corner of said claim, thence South 6 chains to corner in angle thereof, thence West to right bank of the Willamette River, thence up said right bank to its intersection with the South line of said claim thence East to a point due South of beginning point, and thence North 25.17 chains to place of beginning, containing 200 acres, more or less."

Thereafter, by mesne conveyance from Thomas A. Goodpasture and William L. Goodpasture, the defendant Gladys M. Clay became the owner of the following described portion of the above tract:

"Beginning at a point in the center of County Road No. 302 in Lane County, Oregon, 8.67 chains North 1° West from its intersection with the South line of the Alexander Goodpasture Donation Land Claim No. 78, said intersection being at the Northeast corner of the Alexander A. King Donation Land Claim No. 55, in Township Seventeen South, Range Three, West of the Willamette Meridian, and running thence Northerly along center of said road 11.50 chains, more or less, to the North line of said Claim No. 78, thence West along said North line to the right bank of the Willamette River, thence up said right bank to its intersection with the South line of said claim, thence East on said South line to a point 34.68 chains West of the Northeast corner of said Alexander A. King Claim No. 55, thence North 8.67 chains and thence East 34.53 chains to the place of beginning."

In the descriptions above set forth, it is alleged that the course of "right bank of the Willamette River," referred to as a call and course, was surveyed, and that the true and correct course of said right bank, from its point of intersection with the south line of said Donation Land Claim to its intersection with the north line thereof, is as follows:

"Commencing at a point on the South line of said Donation Land Claim No. 78, 5.32 chains East of the Northwest corner of the Alexander A. King Donation Land Claim No. 55, and running thence North 18° 52′ West to an intersection with the North line of said Donation Land Claim No. 78."

Such course, the defendants allege, coincides with and follows, except for slight variations and surveyor's variation defects, the identical course of the westerly boundary of the tract in dispute, and coincides also with the easterly boundary of Kingsley's land, and did and does coincide, except for surveyor's variation mistakes, with the course and direction of "right bank of the Willamette River".

Defendants say further that, on or about October 1, 1909, and particularly at the time when Shacklett made his conveyance to plaintiff, the Willamette River had ceased to flow through or adjoin the real property involved in this suit, or any part of the Goodpasture Donation Land Claim; that defendants Gladys M. Clay and Joe Jacobs, and their predecessors in interest, have been in actual, open, continuous and exclusive possession of the real property of which Gladys M. Clay became the owner by mesne conveyances from Thomas A. and William L. Goodpasture, as aforesaid, for more than seventy-five years. They disclaim any interest in that part of the Donation Land Claim lying

westerly of the course and direction of "right bank of the Willamette River", as referred to above.

For a second affirmative defense, and by way of cross-complaint, the defendants allege that, for more than seventy-five years immediately last past, they and their predecessors have been in actual, open, notorious and exclusive possession of the tract in dispute; that plaintiff and his wife claim some interest therein adverse to them, by virtue of the deed from Susie Larsen, hereinabove referred to, which deed, they say, is a cloud upon their title. They state that they and the plaintiff cannot agree as to the true location upon the ground of the courses and directions of the boundaries between their respective properties, and ask that the court appoint some disinterested, qualified surveyor to survey and mark out such boundaries upon the ground. The reply is in the nature of a general denial.

The trial judge made findings of fact and a decree in conformity with the contentions of the defendants. The plaintiff, F. R. Kingsley, and the defendant Lula Kingsley have appealed.

In simple terms, the matter in controversy is between adjoining landowners, whose properties were formerly separated by a river, over land which comprises the location of the bed of the former stream. This land will be referred to as the tract in dispute. Plaintiff's land lies west, and defendants' land east of the tract in dispute. The former will be called the Kingsley tract, and the latter the Clay tract.

The Goodpasture Donation Land Claim is a long, narrow tract of land running east and west. The government survey of 1860 shows that the right bank of the meandered channel of the Willamette River

forms a portion of the north and west boundaries of the claim. At what period the river abandoned the meandered channel, the evidence does not disclose, but it appears that, subsequent to 1860 and prior to 1894, a new channel was formed, which traversed the D. L. C. from south to north. In 1894, the river was surveyed under the direction of the Corps of Engineers, U. S. A:, and a copy of the official map of that survey is in evidence before us. Thereafter, the river forked some distance south of the south line of the claim, a new branch flowing northwesterly around the west end of the claim, but nowhere intersecting it. The branch which flowed through the claim was known as the East Channel and the west branch was called the West Channel. The East Channel appears to have been a navigable stream up to about the year 1900. Subsequent to 1900, there seems to be no doubt but that it became and remained nonnavigable and its bed gradually became filled in with gravel and silt, as has been stated above.

The appellants' theory of the case is that the land which Kingsley acquired from Shacklett was, in fact, bounded on the east by the East Channel of the Willamette River; that Kingsley's grantor, Shacklett, was a riparian owner and that his fee extended to the thread of the stream; that Kingsley himself became a riparian owner and acquired all of Shacklett's riparian rights in the premises; and that the land in dispute was added to Kingsley's upland by accretion and reliction, and hence became his property.

■ It is the law of Oregon that, when real property is conveyed by a description which actually coincides with a non-navigable stream, the stream itself is the boundary and the grantee takes title to the center or

thread thereof. Section 70-111 (4), O. C. L. A.; *Micelli v. Andrus,* 61 Or. 78, 120 P. 737; *Cross v. Talbot,* 121 Or. 270, 254 P. 827; *Wyckoff v. Mayfield,* 130 Or. 687, 280 P. 340. To be riparian, however, the land must be in actual contact with the water; mere proximity without contact is insufficient. 27 R. C. L., Waters, section 15; Clark, Surveying and Boundaries, 2 ed., section 247; 1 Farnham, Waters and Water Rights, section 70a. The conveyance by Mrs. Gillespie to Shacklett, Kingsley's predecessor, described the land conveyed as being bounded by the west bank of the East Channel of the Willamette River, and so, by such conveyance, he became a riparian owner. Thompson, Real Property, sections 3231, 3235, 3237. If the conveyance had contained language showing an intention on the part of the grantor to reserve land lying between the bank and the thread of the stream, no doubt the court would be obliged to give effect to such intention. Devlin, Real Estate, 3 ed., Deeds, sections 1028a, 1028b. There is no such language, however.

■ The deed from Shacklett to Kingsley did not follow the description that was used in the deed from Mrs. Gillespie to Shacklett. The evidence discloses that one Hughes had contracted with Shacklett to purchase some portion of Shacklett's land, and that Kingsley acquired of Hughes an interest in the contract. In 1909, Hughes and Kingsley determined to divide the land between them, and, for that purpose, caused it to be surveyed. The purpose of making the survey, so far as Kingsley was concerned, was to enable him to acquire the tillable land. He did not want the non-tillable land, or, at least, he did not want to pay for it. He testified: "We didn't consider it very much good at that time." He merely

"measured a convenient line" in order to get the tillable land. He had no information as to whether or not that line was near to or coincided with the east boundary of the property which Shacklett had acquired from Mrs. Gillespie. He said that, as a matter of fact, a part of the south boundary as surveyed actually did follow the bank of the river, but that the east boundary did not. When he acquired the property, he made no claim to any land lying to the east of his east boundary. There is no ambiguity in the description of the east line of the tract, and hence there is no necessity for the court to construe it as coinciding or not coinciding with the river bank. In any event, Mr. Kingsley's own evidence makes it clear that all that he was interested in was in getting all the tillable land in the tract, that he did not know where the east boundary of Shacklett's property was, and that he caused a definite line to be surveyed as his east boundary, without reference to the situation of the river bank, which line did not, in fact, coincide therewith. Under those circumstances, it is apparent that the bank of the river was not his east boundary, and that he acquired no riparian rights. This disposes of the primary theory under which he claimed that he became the owner of land which, by accretion and reliction, was afterward added to the west bank of the river.

■ It will be remembered that the metes and bounds description of the Clay tract ran "west to right bank of Willamette River, thence up said right bank to its intersection with the South line of" the Goodpasture Donation Land Claim. A map of the premises in dispute was introduced in evidence by Mr. Kingsley. From this map, it is made to appear that all that remains of the former east channel is a slough, situated

along the east boundary of the premises in dispute. The surveyor has arbitrarily labelled the slough "present channel". In spite of this and of implications in the testimony of some of the witnesses, this slough, according to our interpretation of the evidence, never was any part of the East Channel. Thomas A. Goodpasture was a witness for the defendants on the hearing. He is an old gentleman of seventy-eight years, a son of Alexander Goodpasture and his wife who acquired the Donation Land Claim from the government, and has lived on and in the vicinity of the claim all his life. He testified that a division of his mother's property was made by her devisees, including himself, under which he and his brother William received all of the Donation Land Claim lying west of a certain county road, which, running north and south, intersects the claim at a point a considerable distance east of the tract in dispute. The deed which effected this division was executed on or about April 21, 1910. He said that he did not think that the slough was ever a branch of the river, although sometimes the water would come down there in time of flood. He maintained that the river was "over farther" westerly. Confirmation of his testimony comes from the map of the survey made in 1894 by the Corps of Engineers, U. S. A., which was introduced in evidence by Mr. Kingsley. This map clarifies the situation upon several important points. It indicates, by channel soundings, that the East Channel, in 1894, was the main channel of the river. It delineates, moreover, what is designated as a high-water slough, lying east of the channel of the river. This slough heads on the river, about a quarter of a mile south of the south boundary of the Donation Land Claim, runs thence in a general

northeasterly direction across the claim, thence north-
easterly about half a mile, and thence northwesterly
for a mile or more, where it rejoins the river. It is
evident that the present slough is what remains of
this former high-water slough. Mr. Kingsley's sur-
veyors superimposed, upon the map of the survey
made by the U. S. Engineers, the exterior boundaries
of the Donation Land Claim, and also those of the
slough, as it appears upon the ground today. The East
Channel of the river, as the map shows, lay west of
the slough. It intersected the claim from south to
north. At the place of its intersection with the south
line of the claim, the channel lies in immediate juxta-
position to the slough, but, from that place, it curves
northwesterly and joins the original meandered chan-
nel of the river, at or about the north line of the
Donation Land Claim. Contending that the present
slough was actually a part of the east channel of the
river, and that the east bank of the slough was the
east bank of the river, the appellants insist that the
call of the north line of the Clay tract is to the east
bank of the slough. We are satisfied, however, that
the call is not to the east bank of the slough, but to
a point on the right bank of the river. From that
point, the west boundary of the Clay tract runs ''up
said right bank to its intersection with the south line
of said claim, thence east'', etc. The lower court held
that this line, except for slight variations and sur-
veyor's variation defects, was identical with the east
line of Kingsley's tract. In our opinion, the evidence
does not support such a finding.

■■ On or about April 2, 1941, Shacklett's heir quit-
claimed the tract in dispute to Kingsley. Based upon
such quitclaim, Mr. Kingsley claims, as a riparian

owner, the land which had been added, by accretion, to the west bank of the east channel. If he can establish the extent of such accretions, he is entitled to them. 1 R. C. L., Accretion, section 3; *Welles v. Bailey,* 55 Conn. 292, 10A. 565, 3 Am. St. Rep. 48; *Minto v. Delaney,* 7 Or. 337; *Moore v. Willamette T. & L. Co.,* 7 Or. 355; *Wyckoff v. Mayfield,* 130 Or. 687, 280 P. 340. No doubt respondents are the owners in fee of a considerable portion of the tract in dispute, viz., that portion which lies east of the right bank of the east channel. (The right bank is that on the right hand as one faces down-stream. Clark, Surveying and Boundaries, 2 ed., section 201.)

■ As to the bed of the former stream, the respective parties, as riparian owners, took title to the center or thread of the stream. 1 R. C. L., Accretion, section 3; *Minto v. Delaney,* supra (7 Or. 337); *Moore v. Willamette T. & L. Co.,* supra (7 Or. 355). If, by gradual and imperceptible action, accretions have been formed, each party is the owner of those which are attached to the bank on his side of the stream, irrespective of where the center or thread may have been.

■ Respondents claim to have acquired title to the tract in dispute by adverse possession. As to that part to which they have neither title nor color of title, they failed to prove adverse possession. They did not fence the land, cultivate it, or pasture livestock upon it. Thomas Goodpasture said that he sold some gravel from it and also cut wood on it for his own use. The evidence does not show whether those acts were performed upon the land within or that without the boundary of his deeded land, and, in any event, the acts were insufficient to establish title by adverse possession of the land to which claimant had no color

of title, his occupation being casual and intermittent. 1 Am. Jur., Adverse Possession, section 206; *Swift v. Mulkey,* 14 Or. 59, 12 P. 76; *Hamilton v. Fluornoy,* 44 Or. 97, 74 P. 483; *Enright v. Meves,* 142 Or. 88, 18 P. (2d) 216; *Reeves v. Porta,* 173 Or. 147, 144 P. (2d) 493. Kingsley also claimed title by adverse possession, but his acts of dominion were all performed within the statutory period of limitation.

Respondents claim that they and their predecessors have for many years paid the taxes which were levied upon the tract in dispute, but, in our opinion, they paid only such taxes as were levied upon their deeded land, as bounded by the right bank of the river.

The lower court felt that the boundary between the lands of the respective parties had been fixed by them by practical location. We do not regard the doctrine of practical construction or location as being applicable to the facts of this case. The parties never disputed as to the location of the boundary, or agreed upon a boundary; indeed, Kingsley made no claim to the land until three or four years ago. Moreover, before practical location can be relied upon, it must be pleaded, (being in the nature of estoppel), and in this case it was not pleaded. *First National Bank v. Allen,* 106 Or. 190, 211 P. 913; *Abrahamson v. Brett,* 143 Or. 14, 21 P. (2d) 229.

The evidence, in our opinion, is insufficient to enable us to decide the case here. We remand it to the trial court, with directions to appoint a competent and disinterested surveyor to survey and mark upon the ground the location of the former East Channel of the Williamette River, where it intersected the Alexander Goodpasture D. L. C., as shown upon the map in evidence herein of the 1894 survey by the Corps

of Engineers, U. S. A. The surveyor may refer to the field notes of that survey, if these be available. When the location of the river shall have been thus determined and shall have been reported to the court, further evidence may be taken to fix the location and extent of whatever accretions may have been formed, within the former river bed, to the land involved herein, and the court shall decree to whom these, as well as the derelictions of the former stream bed, belong, in accordance with the principles enunciated herein.

The respondents have disclaimed any interest in the Kingsley tract, and Mr. Kingsley is, therefore, entitled to a decree confirming him in his ownership thereof as against any claims on their part.

No party shall be allowed costs in this court.