Argued December 13, 1951, reversed and remanded with directions
February 27, petition for rehearing denied March 26, 1952

## KINGSLEY ET UX. *v.* JACOBS ET AL.

241 P. 2d 115

*W. P. Riddlesbarger* argued the cause for appellants. On the brief were Bryson, Riddlesbarger & Bryson, of Eugene.

*L. L. Ray* argued the cause for respondents. On the brief were Ray and Pennington, of Eugene.

Before HAY, Acting Chief Justice, and ROSSMAN, LUSK, LATOURETTE and TOOZE, Justices.

TOOZE, J.

This is a suit to quiet title to certain real property, brought by F. R. Kingsley, as plaintiff, against Joe Jacobs and Emma Jacobs, his wife, and Gladys M. Clay and J. C. Clay, her husband, as defendants. The defendants Joe Jacobs and Gladys M. Clay filed a cross-complaint praying for affirmative relief in their behalf. They joined Lula Kingsley, wife of plaintiff, as a party defendant.

The trial court entered a decree in favor of the cross-complaints, and plaintiff F. R. Kingsley and defendant Lula Kingsley appealed therefrom to this court. We reversed the decree and remanded the cause to the trial court for a specific purpose as stated in the mandate. *Kingsley v. Jacobs,* 174 Or 514, 529, 149 P2d 950.

It is unnecessary for us to set forth a statement of the facts out of which this litigation arose, as those facts are fully stated in our former opinion above referred to.

The mandate issued out of this court, so far as material to the issue now before us, reads as follows:

"It is therefore considered, ordered and decreed that the decree of the court below be and the same hereby is reversed and set aside.
"* * * * *

"It is further considered, ordered and decreed that this cause be remanded to the trial court, with directions to appoint a competent and disinterested surveyor *to survey and mark upon the ground the location of the former East Channel of the Willamette River,* where it intersected the Alexander Goodpasture D.L.C., *as shown upon the map in evidence herein of the 1894 survey by the Corps of Engineers, U.S.A.* The surveyor may refer to the field notes of that survey, if these be available. When the location of the river shall have been *thus determined* and shall have been reported to the court, *further evidence may be taken to fix the location and extent of whatever accretions may have been formed,* within the former river bed, to the land involved herein, and *the court shall decree to whom these,* as well as the derelictions of the former stream bed, *belong,* in accordance with the principles enunciated in the opinion of the court herein." (Italics ours.)

It will be observed that, under this mandate, there were just four things to be done in the trial court, viz.:

1. The court was required to appoint a competent and disinterested surveyor;

2. The surveyor so appointed was required to survey and mark upon the ground the location of the former east channel of the Willamette river, *as shown upon the map in evidence herein of the 1894 survey of the Corps of Engineers, U. S. A.;*

3. When the location of the east channel upon the ground was so determined, additional evidence might be taken, but such evidence was specifically restricted to the location and extent of whatever accretions may have been formed within the former river bed, to the land involved;

4. When the location and extent of such accretions, if any, had been thus determined, the court was required to enter a decree to whom these, as

well as the derelictions of the former stream, belong, *"in accordance with the principles enunciated in the opinion of the court herein."* (Italics ours.)

By this mandate, no discretion was vested in the trial court to do anything other than that directly ordered. All other questions, both of law and fact, raised upon the original trial, were finally adjudicated and determined by the opinion of this court.

Pursuant to this mandate, the trial court appointed one Francis Waggoner, a competent surveyor, of Eugene, to make the required survey. Waggoner made the survey and filed his written report with the clerk of the court, accompanied by a map which he had prepared, showing the location of the east channel of the Willamette river upon the ground, as determined by the 1894 survey of the Corps of Engineers, U. S. A.

Subsequently, a hearing was held in the trial court. The map prepared by Waggoner was duly admitted in evidence. Respecting this exhibit, Waggoner testified:

"Q Handing you Plaintiff's Exhibit E for identification, I will ask you if that is a map which you prepared at that time?

"A It is, yes.

"Q And filed?

"A That is the map, yes.

"Q And does it accurately portray the information in your report and the information which you found on the ground?

"A It does, yes."

For the purposes of this opinion, we have caused to be inserted a true copy of the part of the map in question which fully illustrates the situation now under consideration, except that we have added thereto

the words "EAST CHANNEL", for easier identification.

Upon the original trial, it was contended by plaintiffs, and they offered evidence to the effect, that the east bank of a slough located east of the land in dispute, was the true east or right bank of the east channel of the Willamette river. Upon the hearing in

the trial court pursuant to the directions of the mandate, plaintiffs again sought, by the witness Waggoner, to establish the fact that the said slough was a part of the former east channel. Defendants objected to this line of testimony. The objection was sustained, but the offered evidence was made a matter of record over the ruling of the court.

That the trial court fully understood the directions contained in the mandate is shown by the discussion which ensued between court and counsel regarding the offered evidence. In part, that discussion was:

"THE COURT: It says here 'it is evident that the present slough is what remains of the former high water slough.' [This is a quote from our original opinion.]

"MR. RAY: Well, that's what they said but if you look at that map that's clear north of the river. [The map referred to in the discussion is the 1894 map of the Corps of Engineers.]

"THE COURT: 'The east channel of the river as the map shows lays west of the slough.' [This also is a quote from our original opinion.]

"MR. RAY: That is what they said but—

"THE COURT: If that's what they said we are bound by it.

"MR. RAY: They can't make the map some way that it isn't when they send it back.

"THE COURT: They sent it back to take further evidence of the location of the river, you have got to locate the river and when that is done and determined further evidence may be taken to fix the location and extent of the accretion. You have got to locate the river.

"MR. RAY: That's what I am trying to do. I am trying to lead up to show where this river was in 1904.

"THE COURT: Then when you do that then you show the accretions that have been formed

within the old river bed. Now, locate the river, the old river bed. That's what we want to locate, is the old river bed.

"MR. RIDDLESBARGER: If the Court please, it is marked upon the map by the surveyor, both the east and west bank of the east channel in accordance with the 1894 survey and map. That decision says that this slough is not a part of the channel. There is no other interpretation can be placed upon those words. But what the plaintiff is now trying to do is to establish that the bed of the river includes the slough which the Supreme Court has said it does not. I submit that having located upon the ground, finding out whether or not that is correct, that decision says that the plaintiff is the owner of the land to the thread of that stream from the west bank, the respondents, the defendants are the owners to the thread of that stream from the east bank, and the thread of the stream is in the water. It isn't a gravel bar. I object to any further testimony on this point. It is manifest on this map that there is some gravel here but there is land there, and the slough is on the other side. In other words that the channel is here. I renew my objection.

"THE COURT: Sustained. If you get it in it will have to be over the ruling of the Court.

"MR. RAY: Okay. I would like to put it in under the rule. I don't see how I can do anything else, because neither party can be bound where that river was in '94.

"THE COURT: You are bound by where the Supreme Court says it was."

No other ruling by the court respecting the offered evidence is disclosed by the record. Following the conclusion of the hearing, the trial court entered a decree in favor of plaintiff, quieting title in him to all the disputed tract of land. This decree was necessarily based upon the evidence taken over the ruling

of the court and upon an implied finding by the trial court that the east bank of the slough in question was in fact the east bank of the east channel of the Willamette river. This is illustrated by the description of the disputed land contained in the decree, to-wit:

"All that portion of the Alexander Goodpasture and Wife Donation Land Claim No. 78 in Township 17, South Range 3 West of Willamette Meridian in Lane County, Oregon, which lies West of a slough now lying in a portion of the bed of a stream which was formerly known as the East Channel of the Willamette River, the Westerly line of which said slough now intersects the south line of said Donation Land Claim 650 feet East, more or less, of the Northwest corner of the Alex A. King Donation Land Claim No. 55 in said Township and the North Line of said Donation Land Claim at a point 100 feet East, more or less, of the Southwest corner of the Daniel Snelling Donation Land Claim No. 41 in said Township;"

The defendants have appealed from that decree.

A suit in equity is tried de novo in this court. We have a responsibility to consider and weigh all facts in the case and to arrive at our own independent conclusions respecting the same. Our determination of the facts is final. We disclose our findings upon the facts in the written opinion which we are required to file in connection with our decision. The facts we find, as well as the law we state as applicable thereto, become the law of the case and binding upon the parties litigant, as well as upon any court in which the issue may arise. Our original opinion in the instant litigation was and is binding upon the parties and the trial court. In that opinion, at page 525, we stated the following conclusions as to the facts and law:

"It will be remembered that the metes and bounds description of the Clay tract ran 'west to

right bank of Willamette River, thence up said right bank to its intersection with the South line of'· the Goodpasture Donation Land Claim. A map of the premises in dispute was introduced in evidence by Mr. Kingsley. From this map, it is made to appear that all that remains of the former east channel is a slough, situated along the east boundary of the premises in dispute. The surveyor has arbitrarily labelled the slough 'present channel'. In spite of this and of implications in the testimony of some of the witnesses, *this slough,* according to our interpretation of the evidence, *never was any part of the East Channel.* Thomas A. Goodpasture was a witness for the defendants on the hearing. He is an old gentleman of seventy-eight years, a son of Alexander Goodpasture and his wife who acquired the Donation Land Claim * * *. * * * He said that he did not think that the slough was ever a branch of the river, although sometimes the water would come down there in time of flood. He maintained that the river was 'over farther' westerly. *Confirmation of his testimony comes from the map of the survey* made in 1894 by the Corps of Engineers, U. S. A., which was introduced in evidence by Mr. Kingsley. *This map clarifies the situation upon several important points. It indicates,* by channel soundings, that the East Channel, in 1894, was the main channel of the river. It delineates, moreover, what is designated as a high-water slough, lying east of the channel of the river. * * * *It is evident that the present slough is what remains of this former high-water slough.* Mr. Kingsley's surveyors superimposed, upon the map of the survey made by the U. S. Engineers, the exterior boundaries * * * of the slough, as it appears upon the ground today. *The East Channel of the river, as the map shows lay west of the slough.* * * *Contending that the present slough was actually a part of the east channel of the river, and that the east bank of the slough was the east bank of the river, the appellants insist that the call of the north line

of the Clay tract is to the east bank of the slough. *We are satisfied, however, that the call is not to the east bank of the slough, but to a point on the right bank of the river.* From that point, the west boundary of the Clay tract runs 'up said right bank to its intersection with the south line of said claim, thence east', etc. * * *

"* * * Mr. Kingsley claims, as a riparian owner, the land which had been added, by accretion, to the west bank of the east channel. If he can establish the extent of such accretions, he is entitled to them. * * * No doubt respondents [defendants] are the owners in fee of a considerable portion of the tract in dispute, viz., that portion which lies east of the right bank of the east channel. (The right bank is that on the right hand as one faces down-stream. Clark, Surveying and Boundaries, 2 ed., section 201.)

"As to the bed of the former stream, the respective parties, as riparian owners, took title to the center or thread of the stream. * * * If, by gradual and imperceptible action, accretions have been formed, each party is the owner of those which are attached to the bank on his side of the stream, irrespective of where the center or thread may have been." (All italics ours.)

■ The decree of the trial court now under consideration is in direct contradiction of the law and the facts of this case as established upon the former appeal. The court was correct when it sustained the objection to the offered evidence and erred when it based its decree upon such evidence taken over the ruling. It is clear from our former opinion, as well as from the mandate issued thereon, that we adopted the map of 1894, prepared by the U. S. Engineers, as showing the true location of the east channel of the Willamette river. We ordered that the surveyor appointed by the court locate that channel on the ground as shown

in that map. The surveyor did exactly that. The location thereof on the ground is shown in the map which he prepared and in the detailed description contained in his written report on file herein, and which location we have indicated on the map by the words ''EAST CHANNEL''. We again adopt that as the true location of the east channel and its measurements between banks, in 1904, as well as in 1894.

No evidence was introduced showing any particular accretions or derelictions insofar as the former river bed is concerned. Under the evidence now before us, they become unimportant in any event. We find that the east channel as located on the ground by the witness Waggoner, and as shown on his map and particularly described in his written report, marked the east and west banks of that part of the Willamette river when it was a flowing stream, as well as its bed. It follows, therefore, that plaintiff is the owner of the land lying immediately west of the center line thereof as shown on the map and described in the surveyor's report, and defendants are the owners of the land lying immediately east of said center line.

The decree of the trial court is reversed, and this cause is remanded with directions to enter a decree in favor of defendants, quieting their title to all the disputed land owned by them and lying immediately east of the center line of the former east channel of the Willamette river as shown on the map prepared by the witness Waggoner, and as particularly described in his written report, both of which documents are of record herein; and a further decree quieting the title of plaintiff in and to all the disputed land owned by him and lying immediately west of the center line of the former east channel of the Willamette river as shown on said map, and as described in said written

report of the surveyor Waggoner. Detailed descriptions by metes and bounds shall be prepared by counsel, in accordance with this opinion.

Defendants are entitled to costs.